## OLIVER v DEPARTMENT OF STATE POLICE

Docket No. 71089. Submitted November 16, 1983, at Lansing.—Decided March 5, 1984.

Ernest Oliver, a laboratory scientist in the State Police Crime Laboratory, was fired from his job as a result of going public with allegations of what he viewed as malfeasance in office by the director of the Department of State Police and other responsible officials. Oliver's action was precipitated by continuous harassment of himself and his wife, also a laboratory scientist, by their fellow employees and by what Oliver considered improper laboratory procedures and practices in dealing with evidence. Oliver reported those procedures and practices to the director of the Department of State Police, then to the Attorney General, and finally to the Governor's legal counsel. He was met with stony indifference at each level. He then went to the Lansing State Journal and told his story. As a result, the Journal published at least three articles, a departmental investigation was referred to the Attorney General, and the director of the Department of State Police commissioned a deputy director's inquiry, which resulted in corrective action. Oliver was charged with several violations of civil service and departmental rules, including insubordination and conduct unbecoming a state employee. The deputy director's inquiry panel made findings of fact and recommended dismissal for insubordination

REFERENCES FOR POINTS IN HEADNOTES

[1] 15A Am Jur 2d, Civil Service § 81.
[2] 15A Am Jur 2d, Civil Service § 61.
  16A Am Jur 2d, Constitutional Law § 511.
  50 Am Jur 2d, Libel and Slander § 295 *et seq.*
  Constitutional aspects of libel and slander—Supreme Court cases. 28 L Ed 2d 885.
  Constitutional aspects of libel or slander of public officials. 95 ALR2d 1450.
[3] 15A Am Jur 2d, Civil Service § 84.
  52 Am Jur 2d, Mandamus § 275.
[3, 4] 15A Am Jur 2d, Civil Service § 77.
[4] 15A Am Jur 2d, Civil Service § 88.
  45 Am Jur 2d, Interest and Usury § 60.

and unbecoming conduct in making irresponsible public charges. Oliver was dismissed. He appealed the decision of the hearing panel and, following hearings and the submission of briefs, a grievance decision was issued by a Civil Service Commission hearing officer, finding that Oliver was disloyal to his employer but reducing the discipline from dismissal to suspension without pay conditioned upon public retraction of Oliver's claims. Oliver declined to make the public retraction and filed a petition for review in Ingham Circuit Court. The court, Michael G. Harrison, J., acting for James R. Giddings, J., signed an order ruling that Oliver's statements were entitled to constitutional protection, that there was no evidence that Oliver made false statements knowingly or with reckless disregard as to whether they were true or not, that Oliver had no legal obligation to make a retraction and could not be required, as a condition of continuing employment, to do so, and that Oliver was to be reinstated with back pay. Respondents filed an application for delayed appeal. The Court of Appeals subsequently granted respondents' motion for a stay pending determination of the application for leave to appeal. The application for delayed appeal was eventually denied for lack of merit and the stay of judgment was vacated. Oliver, not having been reinstated, moved the circuit court for a writ of mandamus. Respondents meanwhile filed an application for leave to appeal to the Supreme Court and requested a stay of the pending order until disposition. A week later, the circuit court, James R. Giddings, J., entered an order for a writ of mandamus. Two weeks after that, the Supreme Court ordered that the reinstatement be stayed. The Supreme Court then, in lieu of granting leave to appeal, remanded the case to the Court of Appeals as on leave granted, 417 Mich 971 (1983). The Court of Appeals then granted respondents' motion for a stay. *Held:*

1. The trial court did not err in the scope of its review of the Civil Service Commission's decision or by granting First Amendment protections to Oliver. There was no evidence to support certain crucial findings of the Civil Service Commission hearing officer, and Oliver's allegations to the newspaper were substantially true. The appropriate standard of review in this case is whether the findings of the commission were supported by competent, material, and substantial evidence on the whole record. Furthermore, Oliver's statements to the newspaper involved matters of general and great public concern because the integrity of criminal prosecutions was implicated. Thus the statements were entitled to constitutional protection.

2. The circuit court exceeded its authority in issuing a writ of

mandamus with specific requirements for reinstatement. Under the terms of the employment contract applicable to Oliver, the employer has the authority to select job locale. It was error for the circuit court to specify the identical job assignment and locale at and to which Oliver was to be reinstated. The writ of mandamus must be quashed.

3. Oliver is not entitled to an award of interest on back pay ordered by the circuit court.

The circuit court's order of reinstatement with back pay is affirmed. The writ of mandamus is quashed and the Court of Appeals order awarding interest on the back pay is vacated.

1. Civil Service — Civil Service Commission — Appeal.

The standard of review of final decisions of the Civil Service Commission is whether the commission's findings are supported by competent, material, and substantial evidence on the whole record.

2. Civil Service — Free Speech.

A state civil service employee's exercise of his right to speak on issues of public importance may not furnish the basis for his dismissal from public employment absent proof of false statements knowingly or recklessly made by him.

3. Civil Service — Employee Reinstatement — Mandamus — Job Locale.

A trial court erred in issuing a writ of mandamus ordering that a discharged state civil service employee be reinstated to the identical job assignment and locale at which he had previously worked where the terms of the employment contract applicable to that employee provided that job locale selection was in the hands of the employer.

4. Civil Service — Employee Reinstatement — Back Pay — Interest.

A discharged civil service employee was not entitled to an award of interest on back pay where a circuit court ordered that his employer reinstate him with back pay; the interest statute provides that interest shall be allowed on a money judgment recovered in a civil action, but the circuit court's review of the employee's discharge did not rise to the level of a civil action (MCL 600.6013[1]; MSA 27A.6013[1]).

*Mark T. Light,* for petitioner.

*Frank J. Kelley,* Attorney General, *Louis J.*

*Caruso,* Solicitor General, and *Brenda E. Turner,* Assistant Attorney General, for respondents.

Before: V. J. BRENNAN, P.J., and M. J. KELLY and G. R. COOK,* JJ.

M. J. KELLY, J. To what extent may a government employee publicly criticize his superiors and fellow employees without risking discharge? Petitioner was fired by the State Police, qualifiedly reinstated by the Department of Civil Service, with the qualification stricken on appeal by the Ingham County Circuit Court. We affirm the reinstatement but reverse as to interest.

## FACTS

Petitioner was hired by respondent Department of State Police in 1972 as a laboratory scientist in the State Police Crime Laboratory. After several years he was transferred, at his request, from the Warren branch to the East Lansing branch of the laboratory where his wife, also a laboratory scientist, was employed. From 1974 to 1977 petitioner and his wife were continuously harassed by their fellow employees; the harassment took the form of sexual innuendoes, racial and ethnic slurs, writing of derogatory graffiti on bulletin boards, the deliberate, repeated smoking of noxious cigars near the petitioner's work station, and other forms of malicious, childish abuse, such as spreading sugar on petitioner's work desk.

In 1976 petitioner discovered that a secretary in the evidence laboratory had a key to one of the evidence storage rooms, a serious breach of departmental policy regarding evidence security. Petitioner immediately reported the matter to his

---

* Circuit judge, sitting on the Court of Appeals by assignment.

superiors, who questioned the secretary, found she had never made any use of the key, and reclaimed the key from her possession. An internal memorandum, part of the lower court file, establishes that there were 34 keys to this room, of which 19 were issued, 12 were in storage after having been returned by prior employees, and 3 were unaccounted for, of which the secretary's key was apparently one. However, no further action was taken to correct the breach of security.

Petitioner was apparently disturbed by this incident since he and his fellow technicians had repeatedly testified in criminal proceedings involving drug prosecutions that only authorized personnel had access to the evidence storage rooms. Petitioner then began to note additional improper laboratory procedures and practices, including the fact that fellow technicians left evidence unguarded on their desks overnight rather than locking it in storage. Petitioner compiled a photographic record of each incident which he presented first to the director of the Department of State Police, receiving no response for over two months, then to the Attorney General, and finally to the Governor's legal counsel. At each step he was met with stony indifference.

Petitioner blew the whistle. He went to the Lansing State Journal and decried what he viewed as malfeasance in office by the director of the Department of State Police and other responsible officials. The Journal published at least three articles, a departmental investigation was in turn referred to the Attorney General, and ultimately the director of the department commissioned a deputy director's inquiry, which resulted in corrective action. The inquiry found the existence of poor security procedures and as a result the laboratory was rekeyed.

In the interim, petitioner was charged with several violations of civil service and departmental rules, including insubordination and "conduct unbecoming a state employee". The gravamen was the making of irresponsible charges of misconduct by state police officials to the newspapers. On November 18, 1977, a hearing panel released its findings and recommended dismissal for insubordination and "unbecoming conduct" in making irresponsible public charges. During the course of the hearing the parties stipulated that the caliber of petitioner's work was never in question and in fact had been uniformly high. Petitioner was dismissed on or about November 30, 1977, and pursued his administrative appellate remedies.

Following hearings and the submission of briefs, a grievance decision was issued on September 12, 1978. The hearing officer found that Oliver was disloyal to his employer but reduced the discipline from dismissal to suspension without pay conditioned upon public retraction of the claims. After appeal to the Michigan Civil Service Commission, the matter was remanded to the hearing officer and he issued an amended decision dated September 11, 1979, wherein he incorporated the exact terms of the public retraction as articulated in the September 12, 1978, grievance decision:

"As an essential condition of any reinstatement to his former position as a laboratory scientist, grievant shall be required to retract publicly those statements that he made regarding the 'malfeasance' and 'gross negligence' of the former or present Director of the Michigan State Police and other department officials."

Petitioner declined to make the public retraction and instead filed an appeal and petition for review

in the Ingham County Circuit Court pursuant to MCL 24.302; MSA 3.560(202).

On July 1, 1982, the circuit court issued an opinion from the bench regarding several motions. In pertinent part, the court ruled (we paraphrase):

a) That the statements made by Oliver involved matters of general and great public concern and were entitled to constitutional protection.

b) That there was no competent, material, and substantial evidence to support the conclusion that Oliver made false statements knowingly or with reckless disregard as to whether they were true or not.

c) That Oliver had no legal obligation to make a retraction and could not be required—as a condition of continuing employment—to waive his First Amendment rights.

d) That he was to be reinstated with back pay.

On August 18, 1982, an order reflecting the opinion was entered.

There followed an abortive attempt to perfect an appeal here.

On September 8, 1982—21 days after entry of the August 18, 1982, order—respondents filed a claim of appeal. On October 7, 1982, respondents filed an application for delayed appeal. On November 3, 1982, this Court granted respondents' motion for a stay pending determination of the application for leave to appeal. On February 23, 1983, this Court denied the application for delayed appeal for lack of merit, and the stay of judgment was vacated.

Petitioner, not having been reinstated, moved the circuit court for a writ of mandamus. Meanwhile, respondents filed—on March 15, 1983—an application for leave to appeal to the Supreme

Court and requested a stay of the pending order until disposition. On March 23, 1983, Circuit Court Judge Giddings entered an order for writ of mandamus. However, on April 8, 1983, the Supreme Court ordered that the reinstatement be stayed. On April 26, 1983, the Supreme Court, pursuant to GCR 1963, 853.2(4), in lieu of granting leave to appeal, remanded the case to this Court as on leave granted. *Oliver v Dep't of State Police,* 417 Mich 971 (1983). On May 10, 1983, this Court granted respondents' motion for a stay.

## I

Did the circuit court commit error in the scope of its review of the Civil Service Commission's decision either by invading the fact-finding process of discretionary action or by misapplying First Amendment protections to petitioner?

The Ingham County Circuit Court rendered a comprehensive 56-page opinion preliminary to its order that petitioner be reinstated with full back pay and no loss of seniority. We have reviewed the lengthy record of administrative proceedings below with particular attention to the dispositive summary of the facts section of the grievance decision, the circuit court record, and the briefs on appeal and we find no error. Rather than undertake unnecessarily detailed review of those findings, we believe it sufficient to say that not only did the circuit court correctly conclude that there was no evidence to support certain crucial findings of the Civil Service Commission hearing officer, but the undisputed factual evidence is that petitioner's allegations to the newspaper were substantially true. There is no claim that the information petitioner disclosed to the newspaper was protected by some requirement of confidentiality and in the

circumstances of this case any such imprimatur of confidentiality would be void as against public policy. We summarily reject the respondents' contention that petitioner's statements to the newspaper do not regard topics of public debate or concern. Furthermore, we find that the Ingham County Circuit Court came to the same conclusions of fact as did the Civil Service Commission. The only difference between the decision of the commission and that of the court was on an issue of law regarding the applicability of the facts to the so-called disloyalty test on which the hearing officer incorrectly based his recommendations.

Neither the parties nor Judge Giddings take, or took, issue with the factual summary presented by the hearing officer. The hearing officer found that petitioner was wrong in making statements to newspapers and that:

"The statement reflected disloyalty to the Department. 'Disloyalty to one's employer is one of the most serious charges, if not the most serious, that can be leveled against an employee. If the employee is proven guilty of such charge, few, if any, would argue the discharge from employment is not the only appropriate penalty.' *General Electric Company,* 40 LA 1127 (Davey, 1963)."

The reviewing court determined that the issue was whether there was "competent, material and substantial evidence on the whole record supporting the conclusion that petitioner made false statements knowingly or with reckless disregard as to whether they were true or not". The reviewing court observed that the hearing officer did not directly make such findings. Incidentally, petitioner maintained throughout and continues to the

date of oral argument on appeal before this Court to insist that his allegations were true.

In any event, the circuit court said it would *assume* that the hearing officer ruled that Mr. Oliver knowingly made false statements and therefore it was necessary for the court to comb the record to determine whether the evidence supported such a finding. The court reviewed the fact-findings and opinion of the Civil Service Commission, reviewed the transcript and exhibits, and correctly opined that there was no evidence to support the conclusion that petitioner made the statements knowing them to be false or with reckless disregard as to whether or not they were true. *Viculin v Dep't of Civil Service,* 386 Mich 375, 392; 192 NW2d 449 (1971), sets forth the appropriate standard of review in this case: "[W]hether the [findings] are supported by competent, material and substantial evidence on the whole record". In *Pickering v Bd of Ed of Twp High School, Dist 205, Will County,* 391 US 563; 88 S Ct 1731; 20 L Ed 2d 811 (1968), a high school teacher was dismissed for sending a letter to a local newspaper that was critical of the way in which the board had handled proposals to raise revenue for the schools. Prior to the teacher's dismissal, a hearing was held and it was determined that the publication was detrimental to the effective operation and order of the district. Pickering claimed that the letter was protected by the First and Fourteenth Amendments. The United States Supreme Court agreed with Pickering and reversed the Supreme Court of Illinois.

The Supreme Court said it had before it,

"[A] case in which a teacher has made erroneous public statements upon issues then currently the subject of public attention, which are critical of his ulti-

mate employer but which are neither shown nor can be presumed to have in any way either impeded the teacher's proper performance of his daily duties in the classroom or to have interfered with the regular operation of the schools generally." 391 US 572-573 (footnotes omitted).

In establishing the standard, the Supreme Court said:

"The public interest in having free and unhindered debate on matters of public importance—the core value of the Free Speech Clause of the First Amendment—is so great that it has been held that a State cannot authorize the recovery of damages by a public official for defamatory statements directed at him except when such statements are shown to have been made either with knowledge of their falsity or with reckless disregard for their truth or falsity.

\* \* \*

"This Court has also indicated, in more general terms, that statements by public officials on matters of public concern must be accorded First Amendment protection despite the fact that, the statements are directed at their nominal superiors.

\* \* \*

"\* \* \* However, in a case such as the present one, in which the fact of employment is only tangentially and insubstantially involved in the subject matter of the public communication made by a teacher, we conclude that it is necessary to regard the teacher as the member of the general public he seeks to be.

"In sum, we hold that, in a case such as this, absent proof of false statements knowingly or recklessly made by him, a teacher's exercise of his right to speak on issues of public importance may not furnish the basis for his dismissal from public employment." 391 US 573-574 (footnotes and citations omitted).

In *Connick v Myers*, — US —; 103 S Ct 1684; 75

L Ed 2d 708 (1983), the Supreme Court revisited *Pickering.* In *Connick,* Sheila Myers, an assistant district attorney, was fired after she circulated an interoffice questionnaire concerning office transfer policy, office morale, the need for a grievance committee, the level of confidence in supervisors, and whether employees felt pressured to work in political campaigns. In reversing the district court's and court of appeals decisions requiring Ms. Myers to be reinstated with back pay, damages, etc., the Supreme Court said:

"Our task, as we defined it in *Pickering,* is to seek 'a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees'.

\* \* \*

*"Pickering's* subject was 'a matter of legitimate public concern' upon which 'free and open debate is vital to informed decisionmaking by the electorate.'

\* \* \*

"Yet *Pickering* unmistakably states, and respondent agrees, that the state's burden in justifying a particular discharge varies depending upon the nature of the employee's expression. Although such particularized balancing is difficult, the courts must reach the most appropriate possible balance of the competing interests.

\* \* \*

"The *Pickering* balance requires full consideration of the government's interest in the effective and efficient fulfillment of its responsibilities to the public. One hundred years ago, the Court noted the government's legitimate purpose in 'promot[ing] efficiency and integrity in the discharge of official duties, and to maintain proper discipline in the public service'.

\* \* \*

"We agree with the District Court that there is no

demonstration here that the questionnaire impeded Myers' ability to perform her responsibilities.

\* \* \*

"Also relevant is the manner, time, and place in which the questionnaire was distributed.

\* \* \*

"Finally, the context in which the dispute arose is also significant. This is not a case where an employee, out of purely academic interest, circulated a questionnaire so as to obtain useful research. Myers acknowledges that it is no coincidence that the questionnaire followed upon the heels of the transfer notice." 75 L Ed 2d 717-724 (footnotes and citations omitted).

The instant case is more factually similar to *Pickering* in that it involves the publication of allegedly false statements. This issue was not considered in *Connick*. Thus, it appears that the *Pickering* standard set forth above has continued vitality in the appropriate factual context. *Connick* suggests further factors that may be considered.

In addressing the First Amendment issue, respondents did not challenge application of the *Pickering* standard to the present case. They cite *Council No 11, AFSCME v Civil Service Comm,* 408 Mich 385; 292 NW2d 442 (1980), for the proposition that the Civil Service Commission can regulate conditions of employment even in the area of the First Amendment. In *AFSCME,* the plaintiff was employed as a nurse. He was discharged for violating Civil Service Commission Rule 7.3, in that he filed nominating petitions to become a candidate for sheriff of Ionia County. The Supreme Court granted leave to appeal to consider two issues:

"1) Whether 1976 PA 169 has application to employees in the state classified civil service; and

"2) Whether Rule 7 of the Michigan Civil Service Commission constitutionally regulates the political activities of employees in the state civil service." 408 Mich 390-391 (footnotes omitted).

The Supreme Court held that:

"1976 PA 169 properly applies to classified employees of the state civil service and that, to the extent that Rule 7 is in conflict with the statute or otherwise purports to regulate the off-duty political activity of state classified civil service employees, it is invalid. In view of our holding on that question, we do not reach the constitutional issue." 408 Mich 390-391.

Clearly, *AFSCME* is inapplicable to the instant case.

We feel it unnecessary to further address the free speech issue except to say that we fully agree with the circuit court's finding that petitioner's statement involved matters of general and great public concern. The integrity of criminal prosecutions was implicated.

## II

The next issue is whether the circuit court erred in ordering the specific terms of Mr. Oliver's reinstatement. Respondents contend that the circuit court went beyond its reviewing function in specifying the identical job assignment and locale at and to which petitioner was to be reinstated. We agree. Under the terms of the employment contract which is set out in respondents' brief and the terms of which are not disputed by petitioner; job locale selection is in the hands of the employer. The trial court erred in anticipating arbitrary action by the respondent-employer. Petitioner's arguments about possible and probable retaliatory

action were and are conjectural and the circuit court's order violates the principles of the separation of powers between the judicial and executive branches. See *Bischoff v Wayne County,* 320 Mich 376; 31 NW2d 798 (1948); *Bannan v City of Saginaw,* 120 Mich App 307; 328 NW2d 35 (1982), *lv gtd* 418 Mich 880 (1983), and *Brownstown Twp v Wayne County,* 68 Mich App 244; 242 NW2d 538 (1976), *lv den* 399 Mich 831 (1977). The lower court exceeded its authority in issuing a writ of mandamus with specific requirements for reinstatement venue. Its writ of mandamus must be quashed.

## III

The final issue involves the question of whether or not petitioner is entitled to interest on the award of back pay and, if so, from what date. There is a troubling threshold question of whether or not this issue has been preserved for review. The procedural convolutions that this appeal took resulted in an order of this Court dated June 21, 1983, which appears to preserve the interest issue for review.

At the July 1, 1982, circuit court review during which the circuit court overturned the hearing officer's decision, no provision was made for interest. The order of August 18, 1982, from which this appeal was taken, provided for "such interest and costs as may be provided by law or regulation". The order for writ of mandamus provided for "other benefits as provided by law", but did not specifically mention interest. In this Court's order of May 10, 1983, granting the stay of execution on the writ of mandamus, we conditioned the stay on payment of interest pursuant to MCL 600.6013; MSA 27A.6013. Respondents then filed a motion for rehearing on the stay, challenging the interest

condition. Petitioner filed an answer in opposition
to the rehearing and a motion to add the interest
issue. This Court denied the motion for rehearing
and granted the motion to add the interest issue in
its order of June 21, 1983. Despite this tanglement,
it seems that the issue of interest has been "pre-
served" since Judge Giddings' order of August 18,
1982.

MCL 600.6013(1); MSA 27A.6013(1) provides:

"Interest shall be allowed on a money judgment
recovered in a civil action, as provided in this section."

This section is the exclusive interest provision in a
civil action where a money judgment is recovered.

Respondents argue that circuit court review un-
der the Administrative Procedures Act did not rise
to the level of a civil action. In *Detroit v DPOA,*
408 Mich 410; 294 NW2d 68 (1980), one issue
addressed by the Supreme Court was whether
interest should be permitted on an arbitration
panel's award. The panel of arbitrators, pursuant
to statute, had resolved issues during the forma-
tion of a collective-bargaining agreement. The City
of Detroit brought an action seeking review of the
award and challenging the constitutionality of the
statute which provided for compulsory arbitration.
Defendant DPOA counterclaimed for, *inter alia,*
interest on the economic portions of the award
from the time of its issuance.

The Supreme Court said:

"Both the DPOA and the DFFA have appealed the
trial court's denial of interest on the arbitration panel's
economic award. Since 1969 PA 312 itself is silent on
the subject of interest, the DPOA and the DFFA base
their appeal on MCL 438.7; MSA 19.4, as well as MCL
600.6013; MSA 27A.6013.

"We find MCL 600.6013 to be inapposite to the situation at bar. * * *

"The Act 312 arbitration award is not a 'money judgment recovered in a civil action'. MCL 600.6013, as part of the Revised Judicature Act of 1961, does not apply to compulsory interest arbitration in the public sector. The preamble to the Revised Judicature Act states its concern, instead, to be with such matters as the 'organization and jurisdiction of the courts' and the 'forms and attributes of civil claims and actions'. Our reasoning in the analogous context of disallowing an interest claim on a workers' compensation award made under MCL 600.6013 is here valid. *Cf. Solakis v Roberts*, 395 Mich 13; 233 NW2d 1 (1975). An Act 312 arbitration panel is not 'a court', 'is not possessed of judicial power' and the concept of a money judgment is 'totally alien to the policy and philosophy' of Act 312 which looks to the expeditious and effective resolution of critical-service public sector labor disputes. 395 Mich 21-22.

"We also find MCL 438.7 to be an inappropriate vehicle for the granting of interest. That statute, in pertinent part, states:

" *'In all actions founded on contracts express or implied, whenever in the execution thereof any amount in money shall be liquidated or ascertained* in favor of either party, by verdict, report of referees, award of arbitrators, or by assessment made by the clerk of the court, or by any other mode of assessment according to law, it shall be lawful, unless such verdict, report, award, or assessment shall be set aside, to allow and receive interest upon such amount so ascertained or liquidated, until payment thereof or until judgment shall be thereupon rendered; * * *.'

\*   \*   \*

"Nor do we find entirely persuasive the argument that the statutorily imposed Act 312 contract can itself serve as the 'contract' contemplated by the terms of MCL 438.7. The Act 312 contract, as issued by a panel, is not, as required by MCL 438.7, one that has been executed to the extent that an amount of money is liquidated or ascertained. Further, an Act 312 proceed-

ing cannot be 'founded' on a contract since its very purpose is to make a contract." 408 Mich 499-501.

*DPOA* confirms what this Court said in *Porter v Bd of Optometry,* 41 Mich App 150; 199 NW2d 666 (1972). In *Porter,* the plaintiff's license was suspended by the State Board of Examiners in Optometry. The plaintiff filed a petition for review in the circuit court pursuant to the Administrative Procedures Act of 1969, MCL 24.301 *et seq.;* MSA 3.560(201) *et seq.* The circuit court affirmed the decision of the board. This Court held that the judgment of the circuit court was not a final judgment, appealable as of right. The Court said:

"Logic is not the only basis for our action. In speaking of the constitutional right of review of administrative proceedings, Const 1963, art 6, § 28, the Supreme Court said in *Evans v United States Rubber Co,* 379 Mich 457, 461; 152 NW2d 641 (1967):

" 'We do not read the above language, "shall be subject to direct review by the courts as provided by law", to mean that in each such case review shall be compulsory or as of right upon its being invoked by either party but only that review shall be had when, in the exercise of judicial judgment and discretion, the court shall, on application, so determine, or when so provided by law.'

"Later in the same opinion, the Court held that MCL 600.308 and 309; MSA 27A.308 and 309 apply to appeals as of right in '*civil* matters in the courts'. GCR 1963, 806.1 speaks to *civil* matters. Review of administrative proceedings by a court does not change an administrative proceeding to a civil proceeding, and the Supreme Court, at least by implication, so held in *Evans, supra.*" 41 Mich App 152.

Later, in *Jones v Chrysler Corp,* 394 Mich 432; 231 NW2d 642 (1975), the Supreme Court expressly disapproved the holding of *Porter* that review by

the circuit court did not constitute a final judgment, appealable as of right. The Supreme Court did not comment on the "civil matters" finding.

In *Moore v Carney,* 84 Mich App 399; 269 NW2d 614 (1978), the plaintiff, a minority shareholder, brought suit against the directors of the corporation. The trial court found acts of mismanagement and ordered the defendants to purchase the plaintiff's stock. On appeal, the plaintiff challenged the trial court's denial of interest on the judgment from the date of filing of the complaint. The plaintiff asserted that interest should have been awarded under MCL 600.6013; MSA 27A.6013. This Court said:

"The primary question is whether plaintiff's judgment constituted a 'money judgment', thus necessitating that interest be awarded from the date of filing the complaint.

"A 'money judgment' is defined in Black's Law Dictionary (4th ed), p 980, as:

" 'One which adjudges the payment of a sum of money, as distinguished from one directing an act to be done or property to be restored or transferred.'

"The dictionary cites a Federal case from Michigan, *Fuller v Aylesworth,* 75 F 694 (CA 6, 1896).

\* \* \*

"The trial court, in ruling on the plaintiff's motion for interest from the date of filing the complaint under the statute, noted that while the judgment involved money, it was not solely a 'money judgment'. It was essentially part of an equitable remedy. We agree." 84 Mich App 404-405.

The above cases suggest that interest is not proper in this action under MCL 600.6013; MSA 27A.6013. There is substance to petitioner's argument that he has been deprived of the use of

interest, but there are certainly problems of proof regarding the amount of interest petitioner would actually have made through savings or investment, set-off due to petitioner's wages from other jobs, etc. Petitioner is presently involved in a civil suit against his superiors in the department. Interest as an element of damages is more appropriately considered in that suit.

Petitioner cites *Reich v State Highway Dep't,* 386 Mich 617; 194 NW2d 700 (1972), in support of his claim that the failure to allow interest here would violate equal protection and deny him due process. In *Reich,* the plaintiffs challenged the constitutionality of the 60-day notice requirement of 1964 PA 170—the highway statute which requires notice as a condition to recovery. The Supreme Court held that the notice was unconstitutional as to minors, denying them due process, and that it was arbitrary and violated the Equal Protection Clause in that the victims of private tortfeasors had three years in which to bring their actions.

However, as respondents point out, in *Forest v Parmalee,* 402 Mich 348; 262 NW2d 653 (1978), the Supreme Court basically limited *Reich* to its facts. In *Parmalee,* the Supreme Court held that the two-year statute of limitations under the same act did not violate equal protection even though suits brought against private tortfeasors could be brought within three years.

In our opinion, no analogy can be drawn between *Reich* and the instant case. While it is true —and it may not be fair—that a private suit for wrongful discharge would fall under MCL 600.6013; MSA 27A.6013, the denial of interest in this case is part of the overall administrative scheme involved in public employment. Addition-

ally, petitioner is not without further civil remedies.

The lower court did not exceed the applicable scope of review and correctly applied the *Pickering* standard, based on the findings of both the Civil Service Commission and the circuit court. The lower court did exceed its authority in issuing a writ of mandamus with specific requirements for reinstatement. Interest under MCL 600.6013; MSA 27A.6013 is inappropriate.

The circuit court's order of August 18, 1982, is affirmed. Its writ of mandamus issued March 23, 1983, is quashed. The interest portion of this Court's order of May 10, 1983, is vacated. No costs.