TENBUSCH v DEPARTMENT OF SOCIAL SERVICES

Docket Nos. 99140, 100199. Submitted April 20, 1988, at Detroit. Decided October 17, 1988.

Fred J. Tenbusch, a dentist employed by the Department of Social Services, disagreed with his reclassification following the adoption by the Civil Service Commission of a new classification system for the civil service. Tenbusch's challenge of the reclassification was unsuccessful before a hearing officer, the Employment Relations Board and the Civil Service Commission. He petitioned the Ingham Circuit Court for review. The court, Carolyn Stell, J., reversed the Civil Service Commission and ordered the retroactive reclassification of petitioner to the higher level sought by petitioner. The court also ordered that the retroactive payment of the difference in salary be made with interest. Appeals by the Department of Civil Service and the Department of Social Services were consolidated by the Court of Appeals.

The Court of Appeals *held:*

1. Review by this Court of a final decision by the Civil Service Commission is limited to a determination of whether the decision is authorized by law and, in cases in which a hearing is required, whether the decision is supported by competent, material and substantial evidence on the whole record. If a decision by the Civil Service Commission is supported by such evidence as a reasonable mind would accept as adequate to support the decision, the decision must be affirmed. In this case, petitioner sustained his burden of showing that he should have been reclassified as he contended and respondents failed to present competent, material and substantial evidence which a reasonable mind would accept as adequate to support the decision reached by the hearing officer, the Employment Relations Board and the Civil Service Commission.

2. Circuit court review of a Civil Service Commission decision

REFERENCES

Am Jur 2d, Civil Rights § 411.

Am Jur 2d, Job Discrimination § 2220.

See the Index to Annotations under Equal Employment Opportunity; Jury and Jury Trial.

is not a civil action within the meaning of MCL 600.6013(1); MSA 27A.6013(1), the statute which provides for interest on money judgments recovered in civil actions. Thus, the award of interest in this case is improper and must be vacated.

Affirmed; interest award vacated.

1. CIVIL SERVICE — APPEAL — CONSTITUTIONAL LAW.

The proper scope of judicial review of a decision of the Civil Service Commission is the determination of whether the commission's decision is authorized by law and, in cases in which a hearing is required, whether supported by competent, material and substantial evidence on the whole record (Const 1963, art 6, § 28).

2. CIVIL SERVICE — APPEAL.

A decision of the Civil Service Commission should be upheld if it is supported by such evidence as a reasonable mind would accept as adequate to support the decision; a preponderance of the evidence supporting the decision is not required.

3. CIVIL SERVICE — CLASSIFICATION OF POSITIONS.

The Civil Service Commission may not arbitrarily classify one position at a lower level than another position if the duties and responsibilities of both positions are equal; however, if the duties and responsibilities of two positions are not equal, different classifications are valid.

4. CIVIL SERVICE — APPEAL — CIRCUIT COURT — INTEREST.

Circuit court review of a Civil Service Commission decision denying a civil servant's request for a reclassification to a higher level is not a civil action within the meaning of the statute which provides for interest on money judgments recovered in civil actions; a circuit court may not order that interest be paid on a retroactive award of wages when it orders the reclassification of a civil servant (MCL 600.6013[1]; MSA 27A.6013[1]).

*Fraser, Trebilcock, Davis & Foster, P.C.* (by *Ronald R. Sutton* and *Kathleen E. Kane*), for petitioner.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Arthur E. D'Hondt* and *Michael A. Nickerson,* Assistant Attorneys General, for respondents.

Before: Kelly, P.J., and Sullivan and M. J. Shamo,* JJ.

Kelly, P.J. On September 16, 1979, the Benchmark Factor Ranking System was implemented for employees in the Human Services Group of the State Civil Service (approximately 23,000 employees). This system formed a new basis for classifying positions in the state service. Petitioner, employed in the Human Services Group, challenged his new classification as a Dentist viii, contending that his proper classification should be Dentist xi. After redetermination was denied, petitioner appealed to the Technical Appeal Board. The hearing officer there denied his appeal and this decision was affirmed by the Employment Relations Board. Subsequently, the Civil Service Commission agreed with that decision. However, upon appeal to the circuit court, the decision was reversed and petitioner was reclassified retroactively and awarded interest on the retroactive wages. The Department of Civil Service and the Department of Social Services in this consolidated case appealed that decision to this Court.

I

Prior to the conversion to the Benchmark System, petitioner's classification was Public Health Dentist 16. With the conversion to the Benchmark System, petitioner was classified as a Dentist viii. The pay ranges for these two classifications were identical. At the time the Benchmark classification was made, petitioner was responsible for directing three units, one in Lansing, one in Grand Rapids and one in Detroit. Each unit was headed by a

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

dentist who in turn was responsible for overseeing a clerical support staff, dental hygenists, and dental health consultants. Petitioner also supervised an assistant who was a dentist.

The purpose of petitioner's position, according to the description submitted for determination of classification under the Benchmark System, was "to provide administrative leadership and direction to staff consisting of professional or clerical personnel involved in the prior authorization and review of dental services in the Medicaid Program."

According to the position description submitted for the purpose of the Benchmark conversion and signed by petitioner's supervisor, the entity petitioner supervised was responsible for the following:

> To provide professional review of dental prior approval requests for authorization of services proposed to be rendered to Medicaid recipients by enrolled dental providers. The monitoring and surveillance of service utilization under guidelines and provide professional consultation to providers, and health and social service agencies. On selected cases, conduct field visits for evaluation of the validity of treatment requests and the adequacy of dental services provided.

The Bureau of Classification defines the positions of Dentist VIII and Dentist XI as follows:

> *Dentist VIII:* "This is the first-line supervisory level dentist coordinating and directing the work of professional dentists in one of three programs, i.e., a facility's complete dental program, a dental monitoring and surveillance program or a dental laboratory. The employee, under general supervision, works within general methods and procedures and exercises considerable independent judgment to adapt and apply the guidelines to specific

situations as needed. The employee directs the activities of the journeyman and specialist level dentists. The work requires thorough knowledge of the policies, procedures, and regulations of dental programs and some knowledge of supervisory techniques and personnel policies and procedures. Work assignments stem from the policies of dental programs and the administrative staff with the results being reviewed at the administrative level. The employee performs such functions as approving leaves, performing service ratings, counseling employees, participating in employee grievance procedures and the hiring and training of personnel.

*Dentist XI:* "This is the first-administrative level dentist serving as the director of a divisional dental program of moderate scope. The dentist, serving in the capacity of the overall director of a dental division of moderate scope, administers a divisional major dental health care, treatment and evaluation program. Work is performed under executive direction and within general policies and procedures of the Department. The employee is required to plan and direct the divisional dental health care program of moderate scope and, in conjunction with the divisional management staff, reviews and evaluates the work of program personnel to insure conformance with general guidelines, methods, techniques and policies. The work requires extensive knowledge of the policies, procedures and regulations of the respective dental program and thorough knowledge of administrative techniques and personnel policies and procedures. The employee is required to exercise extensive independent judgment in developing and implementing new approaches to dental services activities. The employee performs such functions as approving leaves, performing service ratings, counseling employees, suspending or dismissing employees, participating in employee grievance procedures and the hiring and training of personnel."

We agree with the observation of the trial court,

that "[t]he primary difference between the two positions is that a Dentist xi would be a director of a divisional program receiving executive supervision, while a Dentist viii would supervise a subunit within a division and receive general supervision." Petitioner here argued that he was the Director of a dental division, while his immediate supervisor was the Director of the Bureau of Health Services, an executive position.

Two problems threaded the appeal process of petitioner's claim for redetermination. The first was whether petitioner actually headed a division and whether his immediate supervisor actually headed a bureau, as petitioner argues, or whether petitioner merely ran a subunit of a division while his supervisor ran a division, as respondents argue. The second problem was whether, under the concept of Benchmark Factor Ranking, petitioner may be organizationally blocked from the position he seeks since his supervisor is classified as Dentist xi.

With regard to the first problem, petitioner contends that at the time of the Benchmark (the relevant period for evaluation of the claim) he was the Director of the Dental Division of the Michigan Department of Social Services Bureau of Health Services Review. Petitioner further argues that the position of his supervisor, Robert M. Levin, D.D.S., was that of Director of the Bureau of Health Services Review. As Director of the Dental Division, supervised by the Director of the Bureau, petitioner contends he should be classified as Dentist xi.

In asking for redetermination, petitioner specifically challenged the scoring of the factors used to reach his classification. Under the Benchmark classification system, each position is rated according to five factors: (I) job requirements; (II) diffi-

culty of work; (III) responsibility; (IV) personal relationships; and (V) specialized and unusual working relationships. It should be recalled that the Benchmark Factor Ranking System replaced the Position Comparison System of classification which had been utilized by the service since 1938. The new Benchmark System is thought to provide a more objective and understandable evaluation of positions; it requires comparison of all positions to an objective standard using a factor basis. It is the scoring of these factors that petitioner challenges.

II

During the proceedings before a hearing officer of the Department of Civil Services Technical Appeal Board, Carol Mowitz, a personnel management analyst, presented argument and testimony on behalf of the Bureau of Classification to support defendant's classification as Dentist VIII. Petitioner had appealed Factors I, II, III and IV.

At the hearing Mowitz first noted that "although the Health Services Review Organization entity is called a bureau and although the entities reporting to it are called divisions, the Levin position, which is the position Dr. Tenbusch reports to, was considered a division at the time of Human Services' implementation; it was not considered a bureau at that time." Mowitz then addressed each challenged factor. Petitioner claimed Factor I should be gridded at 4-E; he was assigned a 4-D. Mowitz testified that the score E was assigned to positions that supervised a professional division or an equivalent program. Mowitz noted that division was defined in the guide to Human Services as follows: "This term is used to describe an organizational entity within an agency. A division is responsbile for carrying out a major portion of the

mission of a bureau. A division is one organizational level below the bureau level."

Mowitz stated that grid level E was assigned to petitioner's supervisor and it therefore could not be assigned to petitioner's position.

With regard to Factor II, the score assigned was 9-H; appellant contended it should be scored 13-J. Relying on the fact that 13 is only assigned to positions that administered divisions (and two other concepts that did not apply to petitioner), Mowitz again stated that, since petitioner had no divisional responsibility, a 13 score was inappropriate. Mowitz noted that even Dr. Levin, petitioner's supervisor, was only scored 11 on this factor.

Similarly with regard to Factor III, petitioner was assigned 15-L, asked for 19-D, and it was explained by Mowitz that a score of 19 was only available to positions responsible for directing a division.

With regard to Factor IV, petitioner was scored 21-S and sought 23-T, and on redetermination was given a score of 22. Mowitz explained that a score of 23 is assigned to positions that have contacts with those who have "very significant impact" on programs and policies involved in the work. The level of contact would be with department directors, legislators and officials of other agencies. Mowitz then stated that petitioner's position does not appear to have this type of contact.

After reviewing the transcript, it is apparent that at least insofar as factors I, II and III are concerned, the difference between the score petitioner argued for and the score assigned was based on petitioner's claim that he headed a dental division and respondents' claim that he merely headed a subunit of such division.

On cross-examination by petitioner's attorney, Mowitz agreed that the work chart provided by

Mowitz as an exhibit, dated September 17, 1979, listed Dr. Tenbusch as director of the dental division. Similarly, Mowitz agreed that the position description for the Tenbusch position, also an exhibit of the respondents', listed Tenbusch as director of the dental division. Mowitz also agreed that the position description of Dr. Tenbusch was approved by his supervisor, Dr. Levin.

Thereafter, the Department of Social Services presented its case. Based on the reasons cited by the Bureau of Classification, it supported the factors assigned to petitioner's position. The DSS then went on to state its case that Dr. Tenbusch's position was organizationally blocked by his superior's position. Reiterating that the Bureau of Health Services Review was only recognized as a division, the DSS viewed Dr. Tenbusch's position as a second-line supervisor of professionals, including dental health consultants, and as a first-line supervisor of dentists. On cross-examination the representative of the DSS stated that, to his knowledge, there was nothing in writing to specifically indicate that Dr. Levin's position was designated as a division director for purposes of the department. The representative of the department admitted that on the organizational chart Levin was listed as a bureau director of Health Services Review.

III

In support of his case, petitioner presented the testimony of Dr. Charles Norris, who was classified as a Dentist VII under the Benchmark System. Norris stated that he was the regional consultant in the Lansing Service Section. He testified that in most instances he reported to Dr. Hanratty, who he considered his supervisor. Norris stated that Hanratty's position was that of deputy or assistant

director to Dr. Tenbusch. Norris stated that Dr. Tenbusch on September 17, 1979, was the director of the dental division.

To rebut the claim that Dr. Hanratty was a first-line supervisor of dentists, making Dr. Tenbusch a second-line supervisor, Mowitz (again representing the Bureau of Classification) relied on a memorandum which was submitted to clarify that Dr. Tenbusch was assigned responsibility to function as a first-line supervisor of dentists. However, the memorandum was prepared a year after the Benchmark implementation.

Dr. Tenbusch testified that, since coming into the service in 1978, he had filled the position of Director of the Dental Division, supervised by Dr. Levin, Director of the Bureau of Health Services Review. Dr. Tenbusch included in his duties and responsibilities overseeing a $25,000,000 program and reviewing approximately 100,000 treatment plans submitted by 2,500 dentists throughout the state. His staff included four dentists, ten hygenists and approximately sixteen clerical workers. Tenbusch stated that he was responsible to see to it that the program ran smoothly and his deputy director, Dr. Hanratty, supervised the regional offices.

With regard to the scoring of the first three challenged factors, Tenbusch's testimony and argument basically rested on his understanding that he was a director of a division. With regard to Factor IV, Tenbusch testified that he had interacted with Dr. Stehan, Acting Director of the Department of Mental Health, and Dr. Reese, a bureau director at the Department of Mental Health. He also stated that he was involved in putting together information for Representatives Anderson and Kheras. Tenbusch stated that he had also recently

been contacted by Congressman Conyers' office over an issue.

## IV

Subsequently, the hearing officer denied petitioner's appeal. This decision was affirmed by the Employment Relations Board. Thereafter the Civil Service Commission received and reviewed the decision of the board and sent notice to all relevant parties that the board's decision was final. And, as previously noted, the circuit court, after noting the appropriate standard of review, reversed this decision.

Const 1963, art 6, § 28 provides the scope of judicial review for administrative action:

> All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record.

This standard applies to final decisions of the Civil Service Commission. *Iams v Civil Service Comm,* 142 Mich App 682, 693; 369 NW2d 883 (1985).

Because of the limited scope of review, the Civil Service Commission's action must be upheld if it is supported "by such evidence as a reasonable mind would accept as adequate to support the decision"; a preponderance of the evidence is not required.

*Id.* at 693. However, "the Civil Service Commission may not arbitrarily classify one position at a lower level than another position if the duties and responsibilites of both positions are equal. The different classifications are valid, however, if the duties and responsibilites of the two positions are not equal." *Parnis v Civil Service Comm,* 79 Mich App 625, 631-632; 262 NW2d 883 (1977).

The decision of the appeal board was based on two issues: the four factors were correctly scored, and petitioner was organizationally blocked from advancing because his immediate supervisor held the classification he petitioned for.

At the administrative level, the basis for the scoring of petitioner's challenged factors was that petitioner headed merely a subunit of a division and not a division. In agreeing with the department reasoning, the hearing officer and the board accepted the evidence of the representative from the Bureau of Classification that merely because petitioner was listed as a division head and his supervisor as a bureau head did not necessarily mean that they actually headed what the Bureau of Classification considered a division and a bureau. On this point we must agree with the trial court. The evidence presented by respondents was not evidence that a reasonable mind would accept as adequate to support the decision. The only evidence was the testimony of the representative of the Bureau of Classification that, despite the organizational chart that listed petitioner as director of the division and despite Dr. Levin's approval of petitioner's position description that he was a director of a division, petitioner was merely the head of a subunit of the division.

Based on the position descriptions submitted by petitioner and approved by his supervisor and on his description of his job responsibilities including

that of second-line supervisor, we find that petitioner sustained his burden of showing that he should have been reclassified as a Dentist XI. Respondents failed to present competent, material and substantial evidence which a reasonable mind would accept as adequate to support the decision of the hearing officer and the board. In addition, the evidence produced at both the Technical Appeal Board hearing and the trial court hearing supports this conclusion. Tenbusch's position entails more than just supervision. His position description states that he provides administrative leadership as well. He also directs a unit of moderate scope because he oversees a $25,000,000 program and exercises statewide authority as opposed to regional authority.

Tenbusch was also responsible for planning a major dental health care program. He was responsible for designing and implementing a computerized subsystem which resulted in savings approaching $5,000,000. He also designed a dental payment history microfiche system which enabled the division to submit $75,000 per year in gross adjustment for individual services inappropriately reimbursed. Reviewing the copy of Tenbusch's proposal for a dental program provided in the Technical Appeal Board record, it is obvious that his position entails extensive knowledge of policies, procedures, and regulations.

From this evidence we conclude that Tenbusch provided sufficient, material and competent evidence to support his claim for reclassification. On the other hand, respondents presented a perfunctory argument. They merely argued that Tenbusch could not be a director of a division because his immediate supervisor was one. In other words, that Tenbusch was organizationally blocked.

Const 1963, art 11, § 5 provides in part:

The commission shall classify all positions in the classified service according to their respective duties and responsibilities, fix rates of compensation for all classes of positions, approve or disapprove disbursements for all personal services, determine by competitive examination and performance exclusively on the basis of merit, efficiency and fitness the qualifications of all candidates for positions in the classified service, make rules and regulations covering all personnel transactions, and regulate all conditions of employment in the classified service.

In an effort to implement this constitutional authority, the commission has promulgated certain rules and regulations. Rule 15.2, Allocation of Position, is one such rule. It provides in part: "In determining the class and level to which any position should be allocated, consideration shall be given to . . . relationship to other classes and levels . . . ."

In addressing the respondents' argument that the concept of organizational blockage prevented petitioner from obtaining the classification of Dentist XI, the trial court examined Rule 15.2. Judge Stell concluded that the concept of organizational blockage is drawn from the Commission's interpretation of Rule 15.2, that a subordinate is prevented from being assigned the same classification as the subordinate's supervisor.

The trial court concluded that this concept had no validity in this case, since "the subordinate's assigned classification does not match the description and function of the Dentist VIII position, but instead exactly matches the description and function of the Dentist XI position." Noting that the Benchmark System's purpose was to "classify positions according to duties performed by the employee," the trial court found the Commission

made an error of law by disregarding the employee's position description in reaching a certain classification decision merely because the employee's supervisor had been assigned the requested classification. We agree.

When the labyrinth of appeal procedures and the arguments and counter-arguments of the parties are reduced to the lowest common denominator, the issue presented was whether petitioner actually directed a dental division. The facts presented by the petitioner overwhelmingly supported his claim. Respondents' facts supporting their position can be termed weak at best. Throughout the proceeding the petitioner was stymied, not only by his challenge to the factoring of his position, but by the argument of respondents that petitioner was organizationally blocked and was without standing to challenge his supervisor's position. This, despite the fact that the description of petitioner's position was that of a director of a divisional dental program of moderate scope, while the supervisor, Dr. Levin, headed the Bureau of Health Services Review, which included a dental division, a prior authorization division, a concurrent review division, a medical monitoring division, and a LTC certification division.

It seems apparent that Dr. Levin's position does not in any way fit within the definition of Dentist XI, that of a dentist serving as director of a dental division of moderate scope. However, for whatever reason, the bureau elected to assign Dr. Levin this classification. On these facts, we hold that it was an error of law for the board to then conclude that petitioner was organizationally blocked from seeking his proper classification.

With the adoption of the Benchmark System, the service attempted to implement a classification system that would require a comparison of all positions to an objective standard on a factor-by-

factor basis, rather than analysis on the basis of comparison to other positions. From a review of the hearings and evidence presented, and mindful of our limited review of decisions of the commission, we nonetheless conclude that there was not competent, material and substantial evidence to support the board's conclusion that petitioner was correctly classified as Dentist VIII. We conclude that on the facts presented the commission made an error of law in finding petitioner organizationally blocked from pursuing classification as Dentist XI.

V

The final issue for consideration is whether the trial court erred in awarding petitioner interest on his retroactive wages because of his reclassification as Dentist XI. First we note, as did the trial court, that there is a split of authority on the issue of whether interest should be awarded. See *Gilliard v Dep't of Social Services,* 135 Mich App 579; 354 NW2d 263 (1982), relying on MCL 438.7; MSA 19.4 for the proposition that an award of interest is justified where wrongful discharge of a government employee takes place. For the contrary position see *Oliver v Dep't of State Police,* 132 Mich App 558; 349 NW2d 211 (1984), relying on MCL 600.6013(1); MSA 27A.6013(1) in finding that interest was not justified when a government employee was reinstated following wrongful discharge.

We conclude that *Oliver* is the better reasoned view. Circuit court review of actions of the commission is not a civil action within the meaning of MCL 600.6013(1); MSA 27A.6013(1). The award of interest is vacated.

The reclassification of petitioner to Dentist XI is affirmed. The award of interest on retroactive wages is vacated.