LIVINGSTON COUNTY BOARD OF SOCIAL SERVICES v
DEPARTMENT OF SOCIAL SERVICES

Docket No. 143740. Submitted January 11, 1994, at Grand Rapids.
Decided January 17, 1995, at 10:15 A.M. Leave to appeal sought.

The Livingston County Board of Social Services brought an action
in the Livingston Circuit Court against the Department of
Social Services, seeking a declaration that the procedures set
forth in MCL 400.45(5); MSA 16.445(5) for the selection of
directors of county departments of social services take prece-
dence over an employment preference plan adopted by the
state civil service commission for the displacement or "bump-
ing" of employees by other employees with more seniority in
cases of reduction in staff. A similar action by the Eaton
County Board of Social Services was consolidated with the
action by the Livingston board. The court, Daniel A. Burress,
J., issued a judgment declaring that the statute governs only
the ordinary appointment process for selecting county directors
and does not control the replacement of such directors by
means of bumping during reductions in staff. The plaintiffs
appealed.

The Court of Appeals *held*:

The selection procedures of § 45(5) apply to all appointments
of directors of county departments of social services and do not
intrude upon the power of the state civil service commission to
establish the terms and conditions of employment of civil
servants.

1. Section 45(5) clearly and unambiguously authorizes county
boards of social services to participate in all appointments of
their respective county social services director. In this case, the
displacement of the directors of the department of social ser-
vices of Livingston and Eaton Counties by employees from the
central offices of the DSS constituted appointments that should
have been conducted pursuant to § 45(5).

2. Section 45(5) does not violate the state constitution. Const

REFERENCES
Am Jur 2d, Civil Service §§ 29, 36, 37; Public Officers and Employ-
ees §§ 21, 100, 106.
See ALR Index under Civil Service; Public Officers and Employees.

1963, art 11, § 5, which enumerates the powers of the state civil service commission with respect to the regulation of civil servants, and Const 1963, art 5, § 2, which directs the Legislature to allocate the functions, powers, and duties of the executive branch of state government within not more than twenty principal departments, must be construed in light of the entire constitution and should not be read to nullify or impair one another. Accordingly, the plenary power of the state civil service commission under art 11, § 5 was not intended to extend to the selection of county directors of social services, which is to be governed by MCL 400.45(5); MSA 16.445(5) even in cases of bumping during reductions in force.

Reversed.

SOCIAL SERVICES — APPOINTMENTS OF COUNTY DIRECTORS OF SOCIAL SERVICES.

The procedures set by statute for the selection and appointment of directors of county departments of social services apply to all such appointments; employment preference rules promulgated by the state civil service commission for the displacement of employees by other employees with more seniority in cases of reductions in staff do not apply to the selection and appointment of directors of county departments of social services (MCL 400.45[5]; MSA 16.445[5]).

*Clary, Nantz, Wood, Hoffius, Rankin & Cooper* (by *John H. Gretzinger*), for the plaintiffs.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *John Wernet,* Assistant Attorney General, for the defendant.

Before: MURPHY, P.J., and GRIFFIN and SAWYER, JJ.

GRIFFIN, J. In this action for declaratory judgment, we are asked to determine whether the statutory selection procedures for the appointment of a county director of social services set forth in MCL 400.45(5); MSA 16.445(5) control over the administrative employment preference rules promulgated by the Michigan Civil Service Commis-

sion. We hold that the statute is constitutional and takes precedence over the administrative rules.

I

The relevant facts are not in dispute. In 1991, the Department of Social Services eliminated several central office administrative positions in Lansing that had position comparison equivalent levels of 15. Two of the positions eliminated were held by David Fitzgerald and Joseph Schwinger. Instead of being laid off, both employees elected to exercise their "bumping" privileges to displace other less senior employees in accordance with the Non-Exclusively Represented Employee (NERE) Employment Preference Plan created by the DSS. The NERE Employment Preference Plan was created pursuant to the administrative employment preference rules promulgated by the Michigan Civil Service Commission.[1] Fitzgerald and Schwinger

---

[1] The NERE Employment Preference Plan was created under the authority of § 2-19 of the Rules of the Michigan Civil Service Commission entitled Employment Preference:

> 2-19.1 Definition. - Employment Preference is a system or process for determining an employee's rights to retain present class and level, or displace another employee, when staff reductions occur.
>
> 2-19.2 Application. - Employment preference shall be applied within an employee's current principal department or autonomous entity established pursuant to law.
>
> * * *
>
> 2-19.4 Qualification. - An employee is eligible to apply preference to positions where the employee meets the qualifications for the position based on state classified employment experience. Displacement will be subject to current approved selective certification qualifications for the position of the less senior employee.
>
> 2-19.5 Employee Rights to Apply Preference. - Within the county of employment, an employee shall apply preference to the least senior position for which qualified within the current class and level; then to the least senior position for which qualified in a different classification at the current or lower level which will minimize loss of pay.

requested employment preference for county director positions located outside Ingham County.

Applying the administrative employment rules, the DSS ordered that the existing county directors of social services for Livingston and Eaton Counties be replaced by Fitzgerald and Schwinger. The action by the DSS was taken unilaterally without consultation with or consent of the county boards of social services.

On March 1, 1991, plaintiff Livingston County Board of Social Services brought an action for declaratory judgment, seeking to invalidate the appointment of Fitzgerald. Thereafter, a virtually identical complaint filed by plaintiff Eaton County Board of Social Services was ordered consolidated. Both plaintiffs allege that the DSS failed to follow the procedures set forth in MCL 400.45(5); MSA 16.445(5) for the selection of county directors. Under the statute, a county director is required to be appointed from "among persons certified as eligible and recommended by the department and by the county social services board." On August 8, 1991, the circuit court ruled that the statute at issue "does not address or control the replacement of such county directors by means of 'bumping' during a reduction in force." Defendant's challenge to the constitutionality of § 45(5) was raised below but not ruled on.

II

On appeal, plaintiffs assert that the selection procedures under § 45(5) are intended to apply to all appointments to the position of county director. Further, plaintiffs contend that the provisions of

2-19.5a Departmental Layoff Plans. - A department layoff plan approved by the Department of Civil Service may modify application of county preference based on organizational or geographic limits but may not modify other parts of this rule.

§ 45(5) do not intrude upon the power of the Civil Service Commission to establish the terms and conditions of employment for state employees. After thorough review, we agree with both assertions.

### III

The primary goal of statutory construction is to ascertain and give effect to the intent of the Legislature. *Sagar Trust v Dep't of Treasury,* 204 Mich App 128, 129; 514 NW2d 514 (1994); *Great Lakes Sales, Inc v State Tax Comm,* 194 Mich App 271, 275; 486 NW2d 367 (1992). When the language used in a statute is clear, the statute must be enforced as written. *Gebhardt v O'Rourke,* 444 Mich 535, 541-542; 510 NW2d 900 (1994); *Hiltz v Phil's Quality Market,* 417 Mich 335; 337 NW2d 237 (1983). In construing the language of a statute, every word or phrase should be accorded its plain and ordinary meaning unless defined in the statute. *Consumers Power Co v Lansing Bd of Water & Light,* 200 Mich App 73, 76; 503 NW2d 680 (1993). Where a term is not defined by statute, this Court may resort to dictionary definitions. *Id.; Ludington Service Corp v Ins Comm'r,* 194 Mich App 255, 261; 486 NW2d 120 (1992), aff'd 444 Mich 481; 511 NW2d 661 (1994).

Section 45(5) of the Social Welfare Act sets forth the selection procedures for the appointment of county directors of social services:

> The director, employees, and assistants of the county department shall be appointed by the state department from among persons certified as qualified by the state civil service commission. The county social services board shall review the qualifications of and interview each applicant for the position of county social services director. The county director shall be appointed from among

persons certified as eligible and recommended by the department and by the county social services board. The county social services board shall advise and make recommendations to the state director regarding the performance of the county director within 6 months after the appointment of the county director and annually after that time. A copy of each evaluation shall be provided to the county director. [MCL 400.45(5); MSA 16.445(5).]

Because the language used in the statute is clear and unambiguous, we construe it in light of its plain and ordinary meaning. Both parties argue that the crucial word in the statute is "appoint." The word "appoint" is not defined by statute. The *Random House College Dictionary: Revised Edition* (1984), p 66, defines "appoint" as "1. to name or assign to a position, office, or the like; designate: *to appoint a judge to the bench.* 2. to determine by authority or agreement; fix; set: *to appoint a time for a meeting.*" Here, the actions of the DSS in directing Fitzgerald and Schwinger to replace the existing county directors in Livingston and Eaton Counties under the NERE Employment Preference Plan satisfies this definition.

We also reject defendant's claim that § 45(5) is not meant to apply "to the peculiar circumstances that accompany a reduction in force." On its face, the statute makes no distinctions based on the circumstances giving rise to the appointment. Therefore, we construe § 45(5) as authorizing the county social services board to participate in all county director appointments. In our view, any attempt to carve out a distinction in the present case would ignore the plain meaning of the statute.

IV

Having found the statute to be applicable, we

next turn to the issue whether the statute violates the state constitution. The DSS argues that § 45(5) imposes job qualifications upon the county director position in violation of Const 1963, art 11, § 5. In response, plaintiffs maintain that the statute is a proper exercise of legislative power. We agree with plaintiffs.

The Michigan Civil Service Commission is an administrative agency established by the Michigan Constitution. *Viculin v Dep't of Civil Service,* 386 Mich 375, 393; 192 NW2d 449 (1971); *Dep't of Social Services v Kulling,* 190 Mich App 360, 363; 475 NW2d 464 (1991). Because the commission's grant of power is derived from the constitution, its valid exercise of power cannot be taken away by the Legislature. *Council No 11, AFSCME v Civil Service Comm,* 408 Mich 385, 408; 292 NW2d 442 (1980); *Pillon v Attorney General,* 345 Mich 536, 547; 77 NW2d 257 (1956). Under Const 1963, art 11, § 5, the commission possesses the following enumerated powers to regulate classified civil servants:

> The commission shall classify all positions in the classified service according to their respective duties and responsibilities, fix rates of compensation for all classes of positions, approve or disapprove disbursements for all personal services, determine by competitive examination and performance exclusively on the basis of merit, efficiency and fitness the qualifications of all candidates for positions in the classified service, make rules and regulations covering all personnel transactions, and regulate all conditions of employment in the classified service.

The foreword to the Rules of the Michigan Civil Service Commission describes the constitutional authority for the employment preference rules promulgated by the commission:

The Constitution of the State of Michigan establishes the framework for a State Civil Service Commission and provides that the Commission shall "make rules and regulations covering all personnel transactions, and regulate all conditions of employment" in the state civil service.

The purpose of these rules is to translate this broad Constitutional language into specific regulations concerning such basic matters as examination, appointment, classification, pay and fringe benefits, appeal rights, and many other aspects of state employment.

Although the Civil Service Commission possesses plenary power to "make rules and regulations covering all personnel transactions and regulate all conditions of employment," art 11, § 5 must be read in conjunction with Const 1963, art 5, § 2. Provisions of the state constitution must be construed in light of the whole document and should not be read to nullify or impair one another. *Durant v Dep't of Education (On Second Remand),* 186 Mich App 83, 115; 463 NW2d 461 (1990); *Marsh v Dep't of Civil Service,* 142 Mich App 557, 566; 370 NW2d 613 (1985).

Const 1963, art 5, § 2, provides, in pertinent part:

All executive and administrative offices, agencies and instrumentalities of the executive branch of state government and their respective functions, powers and duties, except for the office of governor and lieutenant governor and the governing bodies of institutions of higher education provided for in this constitution, shall be allocated by law among and within not more than 20 principal departments. They shall be grouped as far as practicable according to major purposes.

This provision directs the Legislature to allocate the entities in the executive branch of state gov-

ernment and their respective "functions, powers and duties" within not more than twenty principal departments. The Executive Organization Act, MCL 16.101 *et seq.*; MSA 3.29(1) *et seq.*, implemented this constitutional provision.[2] *House Speaker v Governor,* 443 Mich 560, 563; 506 NW2d 190 (1993); *Soap & Detergent Ass'n v Natural Resources Comm,* 415 Mich 728, 741; 330 NW2d 346 (1982). Under this act, the DSS was created as one of nineteen principal departments. MCL 16.104(18); MSA 3.29(4)(18) and MCL 16.550; MSA 3.29(450). Further, the "powers, duties and functions" of the Department of Social Welfare, as created by 1939 PA 280, were transferred to the newly created DSS. MCL 16.552; MSA 3.29(452).

At the time of the Executive Organization Act, the power of the county social welfare boards to participate in the selection of the position of county directors was recognized by 1939 PA 280, as codified by MCL 400.45; MSA 16.445.[3] Under 1939 PA 280, county social welfare boards were given the statutory authority to employ "a director of the county department." The statute further authorized county boards, subject to the approval of the county boards of supervisors, to "select the

---

[2] The title to the Executive Organization Act states:

> AN ACT to organize the executive and administrative agencies of state government; to establish principal departments and department heads; to define the powers and duties of the principal departments and their governing agents; to allocate executive and administrative powers, duties, functions, and services among the principal departments; to provide for a method for the gradual implementation of the provisions of this act and for the transfer of existing funds and appropriations of the principal departments herein created and established.

[3] 1939 PA 280 was amended by 1966 PA 74 to substitute "county department of social services" for "county department of social welfare" and "county social services board" for "county social welfare board."

personnel . . . necessary to carry out the provisions of this act . . . ." Neither art 5, § 2 nor the Executive Organization Act exempted the state classified civil service.

In light of this history and the constitutionally mandated transfer of the "functions, powers and duties" of the Department of Social Welfare, we conclude that the plenary power of the Civil Service Commission was not intended to extend to the position of county director of social services. Accordingly, we hold that the selection procedures for the appointment of a county director under § 45(5) are constitutional and must be followed even in the event of a reduction in force. The statutory selection procedures for the appointment of a county director take precedence over the administrative rules.

Reversed.

Murphy, P.J., I concur in the result only.