### SHURLOW v BONTHUIS

Docket No. 186221. Submitted May 14, 1996, at Grand Rapids. Decided August 6, 1996, at 9:05 A.M. Leave to appeal sought.

William D. Shurlow and Shurhoff Development Company brought an action in the Kent Circuit Court against Thomas Bonthuis and others, seeking the enforcement of guaranties by which Bonthuis promised to perform the obligations of the predecessors in interest of Market Place Media, Inc., under a lease executed by the plaintiffs as lessors and the predecessors as lessees. The plaintiffs had been granted, but had not filed a financing statement for, a landlord's lien on the lessees' personal property on the leased premises. The court, Paul J. Sullivan, J., granted summary disposition for Bonthuis, determining that a financing statement had to be filed pursuant to § 9-304 of the Uniform Commercial Code, MCL 440.9304; MSA 19.9304, to perfect the security interest represented by the landlord's lien and that the plaintiffs' failure to file a financing statement discharged Bonthuis from his obligations under the guaranties. The plaintiffs appealed.

The Court of Appeals *held*:

1. A landlord's lien, if it is contractual, like that which is involved in this case, is not excluded from the coverage of Article 9 of the UCC.

2. A security interest remains unperfected and is subordinate to other security interests where the secured party fails to file a financing statement as required under the UCC. MCL 440.9301(1); MSA 19.9301(1). Here, the plaintiffs' failure to file a financing statement subordinated their security interest to the interest of a bankruptcy trustee in the collateral, and the obligations of Bonthuis under the guaranties he executed were thereby discharged.

Affirmed.

1. SECURED TRANSACTIONS — LANDLORD'S LIENS.

A landlord's lien against a lessee's personal property on the leased premises, if it arises by contract, is subject to the requirements of Article 9 of the Uniform Commercial Code, including the requirement that a financing statement be filed with the appropriate state agency (MCL 440.9104[b], 440.9304[1]; MSA 19.9104[b], 19.9304[1]).

2. SECURED TRANSACTIONS — LANDLORD'S LIENS — GUARANTORS.

> A guarantor of a lessee's obligations under a lease that grants the lessor a landlord's lien against the lessee's personal property may be discharged from obligations under the guaranty where the lessor has impaired the collateral by failing to file a financing statement so as to subordinate the lessor's security interest to other security interests.

*Marvin & Associates* (by *Richard A. Marvin* and *Jon V. Coretti*), for the plaintiffs.

*Law, Weathers & Richardson, P.C.* (by *Ingrid A. Jensen*), for the defendant.

Before: DOCTOROFF, C.J., and NEFF and FITZGERALD, JJ.

NEFF, J. Plaintiffs appeal as of right from the order of the circuit court granting summary disposition to defendant Bonthuis on the basis that plaintiffs' failure to file a financing statement to perfect a landlord's lien impaired the collateral so as to discharge Bonthuis' obligation under two personal guaranty agreements. We affirm.

I

In 1991, plaintiffs and the predecessors of Market Place Media, Inc.'s (MPM), entered into a series of commercial leases for office space. In these leases, the predecessors granted plaintiffs a landlord's lien[1] covering personal property located on the leased premises. As an inducement for these leases, Bonthuis, an officer for the predecessors, executed

---

[1] A "landlord's lien" is defined as a device by which a landlord may exclude a tenant from the leased premises and gain control over the tenant's personal property found therein as a remedy when the tenant fails to pay rent in accordance with the lease in question. 2 Powell on Real Property, § 16A.01[5][a], p 16A-35. Such a lien may arise by statute, common law, or contract. White & Summers, Uniform Commercial Code (3d ed), § 21-7, p 951.

two personal guaranty agreements promising to secure the predecessors' performance under the leases. However, plaintiffs failed to do anything to perfect their lien on the personal property in question. Additionally, MPM terminated Bonthuis' employment soon after its purchase of the business.

In 1993, MPM failed to pay rent due under the leases. As a result, plaintiffs filed suit in the district court against MPM and Bonthuis, and they received a judgment of possession and a money judgment for $9,354.32 against MPM and Bonthuis. Subsequently, plaintiffs filed this case against MPM and Bonthuis for additional damages. However, MPM and Bonthuis filed bankruptcy petitions seeking protection from their creditors under Chapter 7 of the Bankruptcy Code. As a result, the trial court stayed this case pending the resolution of the bankruptcies.

The bankruptcy trustee sold MPM's personal property for $34,929.50. Plaintiffs filed a claim against the bankruptcy estate for $22,758.93, claiming secured status pursuant to the landlord's lien in the lease and the district court judgment. Notwithstanding this claim, the bankruptcy court subordinated plaintiffs' claim to the interest of MPM's bankruptcy trustee. Because of this subordination, plaintiffs received no proceeds from the sale of MPM's personal property by the bankruptcy trustee. After the rejection of plaintiffs' claim in the bankruptcy court, Bonthuis withdrew his bankruptcy petition, and the trial court lifted the stay that had suspended the proceedings in this case.

Subsequently, Bonthuis moved for summary disposition under MCR 2.116(C)(8) and (10), claiming that plaintiffs' failure to file a financing statement in

accordance with Article 9 of the Uniform Commercial Code,[2] which would have perfected their landlord's lien, impaired the collateral consisting of MPM's personal property, and freed Bonthuis from any obligation under his personal guaranties. Plaintiffs argued that their landlord's lien was exempted from the coverage of Article 9 by MCL 440.9104(b); MSA 19.9104(b), so Bonthuis was not protected under Article 9 from plaintiffs' claims. Alternatively, plaintiffs argued that even if their landlord's lien fell within the coverage of Article 9, MCL 440.9207; MSA 19.9207 did not free Bonthuis from his obligations under the guaranty agreements. The trial court rejected plaintiffs' arguments and granted summary disposition in Bonthuis' favor.

II

We first examine plaintiffs' contention that the clear and unambiguous language of § 9-104(b) provides an exemption for a landlord's lien from coverage under Article 9. This issue is one of first impression in Michigan. We disagree with plaintiffs' position and hold that such a lien falls within the coverage of Article 9.

A

Statutory construction is a question of law that this Court reviews de novo for error. *Haworth, Inc v Wickes Mfg Co*, 210 Mich App 222, 227; 532 NW2d 903 (1995). The primary purpose of statutory interpretation is to ascertain and give effect to the intent of the Legislature. *People v Stanaway*, 446 Mich 643, 658;

---

[2] MCL 440.9101 *et seq.*; MSA 19.9101 *et seq.*

521 NW2d 557 (1994). If the statute is clear and unambiguous on its face, this Court will enforce it as written, *Livingston Co Bd of Social Services v Dep't of Social Services*, 208 Mich App 402, 406; 529 NW2d 308 (1995), unless to do so would be clearly inconsistent with the purposes and policies of the statute, *Rowell v Security Steel Processing Co*, 445 Mich 347, 354; 518 NW2d 409 (1994).

B

Article 9 of the UCC controls the formation, priority, and enforceability of security interests[3] in certain types of property. White & Summers, Uniform Commercial Code (3d ed), § 21-2, p 926. Nevertheless, the article specifically states that it does not apply to landlord's liens. MCL 440.9104(b); MSA 19.9104(b). Because Michigan has neither enacted a statutory lien nor recognized a common-law landlord's lien, plaintiffs argue that under the clear and unambiguous language of the statute, our Legislature intended the exclusion in § 9-104(b) to apply to the only type of landlord's lien found in our state, a contractual lien.

A cursory examination of the statutory language supports plaintiffs' proposed construction. See *Livingston, supra*. However, two considerations mitigate against following the literal language of the statute.

First, the UCC provides that it should be construed "to make uniform the law among the various jurisdictions." MCL 440.1102(2)(c); MSA 19.1102(2)(c). Thus, we look to decisions from other jurisdictions for guidance. *Check Reporting Services, Inc v Michigan*

---

[3] The UCC defines the term "security interest" to mean "an interest in personal property or fixtures which secures payment or performance of an obligation." MCL 440.1201(37); MSA 19.1201(37).

*Nat'l Bank-Lansing*, 191 Mich App 614, 623; 478 NW2d 893 (1991).

Generally, other jurisdictions look to how the landlord's lien was created when they determine whether § 9-104(b) applies to the given lien. If the lien arose via a consensual, contractual relationship, the courts have determined that § 9-104(b)'s exclusion is inapplicable and that the lien in question falls within the coverage of Article 9. *United States v Globe Corp*, 113 Ariz 44, 50; 546 P2d 11 (1976); *Todsen v Runge*, 211 Neb 226, 232-233; 318 NW2d 88 (1982); *Dunham's Music House, Inc v Asheville Theatres, Inc*, 10 NC App 242, 245; 178 SE2d 124 (1970). See also *In re Waldo*, 70 Bankr 16, 19 (ND Ia, 1986). In order to keep Michigan law uniform with these other jurisdictions, we hold that a contractual landlord's lien will not be excluded from the coverage of Article 9.

Second, we conclude that the security interest in this case was not a "landlord's lien" as that term is used in § 9-104(b). In *In re King Furniture City, Inc*, 240 F Supp 453, 456-457 (ED Ark, 1965), the court framed and dealt with the issue presented here in the following manner:

> This issue can also be stated in another way—that is, does a lien set out in a lease become a "landlord's lien" under [Article 9-104(b)] by virtue of the fact that the relationship of landlord and tenant exists between the parties thereto? This Court thinks not, for to permit a lien created by contract in such a manner to be excluded from the requirements of the Uniform Commercial Code would, in many instances, greatly restrict the benefits expected to be obtained from the Uniform Commercial Code in connection with the financing of inventories and lending against accounts receivables.

. . . From this viewpoint it also appears that the term "landlord's lien" as used in the statute must be interpreted as referring to liens created by statute, for the matter of liens on property such as here involved is obviously considered by all of the remainder of the Code as fitting into a general commercial statute.

We agree with this line of reasoning and adopt it as our own to conclude that contractual "landlord's liens" are not covered by the exemption in § 9-104(b).

Because there is no dispute that plaintiffs' lien arose from a written lease contract, this landlord's lien falls within the coverage of Article 9. Thus, we agree with the trial court and reject plaintiffs' first claim of error.

III

Next, plaintiffs argue that the trial court erred as a matter of law in holding that § 9-207 freed Bonthuis from his obligations under the guaranty agreements. We find no error in the trial court's ruling with regard to this issue.

A

This Court employs review de novo for questions of law. *Duggan v Clare Co Bd of Comm'rs*, 203 Mich App 573, 575; 513 NW2d 192 (1994).

B

Because the UCC considers a landlord's lien to be a form of chattel paper,[4] the secured party must file a financing statement pertaining to the lien with the

---

[4] Generally, landlord's liens are considered chattel mortgages. 2 Powell on Real Property, § 16A.01[5][b], p 16A-36. Under the UCC, chattel mortgages are considered chattel paper. MCL 440.9105 comment 4; MSA 19.9105 comment 4.

appropriate state agency. MCL 440.9304(1); MSA 19.9304(1). If the secured party fails to file the financing statement, the security interest behind the lien remains unperfected, and it will be subordinated to other security interests or types of creditors. MCL 440.9301(1); MSA 19.9301(1). The secured party must use reasonable care to ensure that the security interest is properly filed. MCL 440.9207(1); MSA 19.9207(1). Thus, if the secured party fails to perfect its interest in the landlord's lien, the secured party is liable for any damages that may flow from this failure. MCL 440.9207(3); MSA 19.9207(3).

To illustrate, in *Nat'l Bank of Detroit v Alford*, 65 Mich App 634, 635-636; 237 NW2d 592 (1975), the plaintiff secured its loan to Voyager Detroit, Inc., with a chattel mortgage and a guaranty from the defendant. However, the plaintiff failed to record properly its chattel mortgage, so its security interest was subordinated to the one filed by another lender. *Id.* at 636. Because of this subordination, the plaintiff filed suit against the defendant to recover the balance due on its loan under the guaranty agreement it had with the defendant. *Id.* This Court, however, decided that the plaintiff's claim must fail because it breached its duty to use reasonable care as mandated by § 9-207 and that its breach caused the defendant to lose his subrogation rights against Voyager. *Id.* at 638-639. Consequently, in Michigan, a guarantor is discharged when the secured creditor, by failing to perfect a security interest, impairs the collateral in question.

There is no dispute that plaintiffs failed to file a financing statement to perfect their landlord's lien, and, as a result, plaintiffs' lien was subordinated to the bankruptcy trustee's interest in the collateral.

Similarly, there is no dispute that Bonthuis was a guarantor for the leases in question. Clearly, the trial court determined that plaintiffs' negligence impaired the collateral and discharged Bonthuis. This determination is squarely in accordance with *Alford*. We reject plaintiffs' attempt to distinguish *Alford* because the alleged distinctions are supported by neither the UCC nor the case law cited by plaintiffs.[5] Therefore, we find no error in this aspect of the trial court's ruling.

We conclude that the trial court did not err in granting summary disposition in Bonthuis' favor.

Affirmed.

---

[5] We note that plaintiffs' reliance upon *Union Planters Nat'l Bank of Memphis v Markowitz*, 468 F Supp 529, 534 (WD Tenn, 1979), is misplaced because the federal court's statement that a guaranty agreement does not create a security interest was merely dictum. Further, the Sixth Circuit Court of Appeals decided without a published opinion to affirm a decision by the federal district court for the Eastern District of Tennessee rejecting *Markowitz* and concluding that guarantors are afforded protection under Article 9. *First Heritage Nat'l Bank v Keith*, 902 F2d 33 (CA 6, 1990).

Because Bonthuis is a "debtor" as the term is defined in MCL 440.9105(1)(d); MSA 19.9105(1)(d), MCL 440.9501(2); MSA 19.9501(2) allows Bonthuis to claim protection under § 9-207. See, e.g., *Gambo v Bank of Maryland*, 602 Md App 166; 648 A2d 1105 (1994).