HANLON v CIVIL SERVICE COMMISSION

Docket No. 232208. Submitted October 2, 2002, at Detroit. Decided November 5, 2002, at 9:05 A.M. Leave to appeal sought.

Diane Hanlon and other civil servants employed by the Department of Community Health who were classified by the Civil Service Bureau of Classification and Selection Operations (the Classification Division) as Community Home Developers VI (CHD VI) requested reclassification as Community Home Development Consultants (CHDC) or as CHD VII. The Classification Division denied the request. A redetermination officer upheld the classification against a challenge by the affected civil servants. The civil servants filed a technical appeal. A technical hearing officer conducted an evidentiary hearing and affirmed the Classification Division's decision after determining that the civil servants failed to establish by a preponderance of the evidence that the decision lacked a rational basis. The civil servants appealed to the Employment Relations Board (ERB) by leave granted. The ERB affirmed the technical hearing officer's decision and recommended to the Civil Service Commission (CSC) that the CSC approve and adopt the ERB decision as its decision. The CSC followed the ERB recommendation. The civil servants petitioned the Wayne Circuit Court for judicial review of the CSC decision, claiming that the rational basis standard, under which their classification challenge was decided, was unconstitutional and that they were deprived of their right to due process. The circuit court, Thomas W. Brookover, J., rejected the petitioners' claims and affirmed the CSC decision. The petitioners appealed by leave granted.

The Court of Appeals *held*:

The rational basis standard adopted by the CSC does not violate Const 1963, art 11, § 5, nor does it offend principles of due process. Additionally, the CSC, possessing plenary power under the constitution, had the authority to require the petitioners to prove by a preponderance of the evidence that the Classification Division's findings were not rationally based. Further, there were sufficient findings of fact below to allow appropriate appellate review where the record sufficiently indicated the reasons for the CSC decision. Finally, the circuit court did not clearly err in ruling that the CSC

decision was supported by competent, material, and substantial evidence.

1. Const 1963, art 11, § 5 grants the CSC broad authority to regulate the state classified service, including the power to adopt procedures by which a grievance by a state civil service employee is reviewed, subject only to the requirement that such procedures be consistent with due process. The rational basis standard at issue in this case does not violate Const 1963, art 11, § 5.

2. Assuming that the petitioners' interest in a particular classification is a property interest subject to due process protection, the petitioners have not been deprived of due process. The petitioners received appropriate notice of the nature of the proceedings and had an opportunity to be heard in a meaningful time and manner before an impartial decisionmaker.

3. Given the CSC's plenary power and authority to adopt any constitutionally sound grievance or appellate procedure it finds appropriate, there is no reason the CSC cannot require the petitioners to prove by a preponderance of the evidence that the classification decision lacked a rational basis. The standard is fair and appropriate, and it provides adequate protection to employees where staff classification determinations cannot be made in an arbitrary or capricious manner but must be rationally based on the evidence or be subject to reversal.

Affirmed.

CIVIL SERVICE — CIVIL SERVICE COMMISSION — CLASSIFICATION DECISIONS.

The Michigan Constitution grants the Civil Service Commission broad authority to regulate the state classified service, including the power to adopt procedures by which an employee can challenge a classification decision; such procedures, however, must satisfy due process, which requires notice of the nature of the proceedings, an opportunity to be heard in a meaningful time and manner, and an impartial decisionmaker (Const 1963, art 1, § 17 and art 11, § 5).

*Klimist, McKnight, Sale, McClow & Canzano, P.C.* (by *Roger J. McClow*), for Diane Hanlon and others.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Susan Przekop-Shaw*, Assistant Attorney General, for the Civil Service Commission and the Department of Community Health.

Before: MURPHY, P.J., and MARKEY and R.S. GRIBBS*, JJ.

MURPHY, P.J. Petitioners appeal by leave granted the circuit court's order affirming the decision of respondent Michigan Civil Service Commission (CSC) denying petitioners' request for reclassification of their positions with respondent Michigan Department of Community Health. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

This case has a long and extensive history commencing in 1985. Petitioners were employees of the Department of Community Health, and their employment involved, in broad terms, recruiting landlords, locating suitable homes, inspecting the homes for any necessary modifications, and arranging for the leasing of those homes, all of which activities were part of the Supported Independence Program for the benefit of mentally and developmentally impaired persons. Petitioners were also involved in the licensing, monitoring, and inspection of child foster homes. Finally, petitioners were responsible for visiting group homes to ensure that targeted maintenance functions were being performed.

The issues presented on appeal do not require an exhaustive discussion of the case's history, which has encompassed numerous requests by petitioners for job title reclassification and departmental appeals. The matter at issue is whether petitioners should be classified as Community Home Developers VI

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

(CHD VI), as respondent commission argues, or as Community Home Development Consultants (CHDC) as argued by petitioners.[1]

Pursuant to rules and regulations promulgated by the CSC, the Civil Service Bureau of Classification and Selection Operations (the Classification Division) conducts periodic and ongoing reviews of positions in the classified service for the purpose of ensuring they continue to be properly classified. An employee may request a review of his classification. The Classification Division staff, knowledgeable and experienced in classification designations, evaluates and determines the appropriate classification for every civil service position, and a review is undertaken when an employee requests reclassification. When a position review request is made, an analyst with the Classification Division conducts an investigation of the position, including an on-site audit that may involve employee, supervisor, and co-worker interviews.

After an analyst issues a classification decision, the employee is entitled to seek a redetermination within the Classification Division, and this process may include a conference or submission of additional information. The director of classification or his designated representative issues a decision on redetermination. An employee may appeal a redetermination decision to a technical hearing officer. The hearing officer's decision may be appealed by leave to the Employment Relations Board (ERB), which issues a decision and recommendation to the CSC. The CSC

---

[1] Petitioners had also argued that they should be classified as Community Home Developers VII (CHD VII); however, petitioners declined to pursue that argument on appeal to the circuit court and this Court.

evaluates the case and the recommendation and renders a final decision.

After numerous complaints, investigations, hearings, and appeals within the commission regarding petitioners' classification, the Classification Division placed petitioners in the CHD VI classification. The Classification Division refused a request to create a CHDC classification for petitioners or to classify them as CHD VII. Personnel Management Analyst Anne J. Harrington of the Classification Division rendered these classification determinations following an investigation, and Redetermination Officer Mary Lindsay upheld the classification determinations following a challenge by petitioners.

Petitioners thereafter filed a technical appeal, and the technical hearing officer affirmed the Classification Division's decision following a three-day evidentiary hearing. The hearing officer ruled that his review was limited in scope by the commission's decision in *Novak v Dep't of Civil Service* (CSC 96-04), which required a Classification Division's ruling to be affirmed if there was a rational basis supporting the ruling. *Novak* provided that an employee bears the burden of proving by a preponderance of the evidence that the decision by the Classification Division lacked a rational basis. The technical hearing officer's written decision was eight pages long, including four pages of procedural facts and substantive factual findings.

Petitioners appealed the hearing officer's decision to the ERB by leave granted. The ERB ruled:

> While it is the case that the standard determined by the Civil Service Commission as appropriate to evaluate the correctness of a technical classification decision—namely,

whether the decision has a rational basis—narrowly circumscribes the judgment to be made by a [technical hearing officer] or the Board in these situations, it is the standard by which our decision must be governed. Applying the standard here, we cannot conclude that the [hearing officer] erred, and the decision of the [officer] is therefore affirmed.

The ERB recommended adoption of its ruling by the CSC. Subsequently, the commission approved and adopted the ERB decision as its final decision in the matter. Additionally, the CSC specifically ruled that the rational basis standard as established in *Novak* was legally proper.[2]

Petitioners appealed to the circuit court, arguing that adoption of the rational basis standard violated Const 1963, art 11, § 5 ("The commission shall classify all positions in the classified service according to their respective duties and responsibilities . . . .") and art 1, § 17 (due process). Petitioners also argued that there was a lack of competent, material, and substantial evidence to support the commission's decision. The circuit court ruled that the CSC had the authority to implement the rational basis standard, that the standard did not violate Const 1963, art 11, § 5, and that due process was not implicated because there was no protected property interest at stake. Moreover, the circuit court ruled that there was sufficient evidence to support respondent commission's ruling. On appeal before us, petitioners essentially raise the same issues presented to the circuit court with a

---

[2] The CSC elaborated on this standard in *Kasenow v Dep't of Civil Service* (CSC 2000-017), wherein the commission stated that the staff decision is presumed valid and that the employee must prove by a preponderance of the evidence that the reasons articulated by the decisionmaker are so arbitrary and capricious that they could not reasonably be construed to be true.

focus on the constitutionality of the rational basis standard.

## II. STANDARD OF REVIEW

In *Boyd v Civil Serv Comm*, 220 Mich App 226, 232-235; 559 NW2d 342 (1996), this Court enunciated the proper standards of review applicable to a circuit court's review of a decision by the CSC and this Court's review of the circuit court's decision. With regard to the circuit court's review, the *Boyd* panel quoted Const 1963, art 6, § 28, which provides:

> All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record. [*Boyd, supra* at 232, n 3.]

With regard to this Court's review of the circuit court's decision, the *Boyd* panel stated that "when reviewing a lower court's review of agency action this Court must determine whether the lower court applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the agency's factual findings." *Id.* at 234. This latter standard is essentially a clearly erroneous standard of review, and a finding is clearly erroneous when, on review of the whole record, this Court is left with a definite and firm conviction that a mistake has been made. *Id.* at 234-235.

Petitioners raise constitutional issues that are reviewed de novo by this Court. *In re Hawley*, 238 Mich App 509, 511; 606 NW2d 50 (1999).

### III. ANALYSIS

#### A. CONSTITUTIONALITY OF THE RATIONAL BASIS STANDARD

CONST 1963, ART 11, § 5

Petitioners first argue that the rational basis standard is constitutionally infirm because the technical hearing officer, the ERB, and the CSC could not, in essence, defer to a decision made by administrative staff, where the constitution directs the commission to classify all positions according to their respective duties and responsibilities. The CSC is an administrative agency that was established by the Michigan Constitution. *Livingston Co Bd of Social Servs v Dep't of Social Servs*, 208 Mich App 402, 408; 529 NW2d 308 (1995). Const 1963, art 11, § 5 provides in part:

> The commission shall classify all positions in the classi-fied service according to their respective duties and respon-sibilities, fix rates of compensation for all classes of posi-tions, approve or disapprove disbursements for all personal services, determine by competitive examination and per-formance exclusively on the basis of merit, efficiency and fitness the qualifications of all candidates for positions in the classified service, make rules and regulations covering all personnel transactions, and regulate all conditions of employment in the classified service.

Because the CSC's power and authority is derived from the constitution, its valid exercise of that power cannot be taken away by the Legislature. *Livingston Co, supra* at 408. Our Supreme Court in *Viculin v*

*Dep't of Civil Serv,* 386 Mich 375, 393; 192 NW2d 449 (1971), recognizing that the CSC has broad authority to regulate the state classified service, stated that the commission "is a constitutional body possessing plenary power and may determine, consistent with due process, the procedures by which a state civil service employee may review his grievance."[3] The CSC has absolute powers in its field. *Id.* at 398. Pursuant to its constitutional mandate, "[t]he commission is free to adopt any grievance or appellate procedure it finds appropriate as long as it does so consistently with the requirements of due process since it has full and absolute power over civil service employees." *Gilliard v Dep't of Social Servs,* 135 Mich App 579, 585; 354 NW2d 263 (1982).[4]

The CSC has the authority to make rules and regulations; however, the rules and regulations implemented by the commission must be consistent with the other expressed powers vested in the commission and within any constitutional limitations. *Reed v Civil Serv Comm,* 301 Mich 137, 158; 3 NW2d 41 (1942). "If rules and regulations are contrary to any provision of the [constitution], they cannot stand merely by virtue of the authority conferred upon the commission to make rules and regulations." *Id.*

The case law makes it abundantly clear that the CSC has extensive constitutional power and authority to

---

[3] This Court in *Womack-Scott v Dep't of Corrections,* 246 Mich App 70, 79; 630 NW2d 650 (2001), stated that "[t]he CSC regulates the terms and conditions of employment in the classified service and has plenary and absolute authority in that respect." (Citations omitted.)

[4] "The commission determines the procedures by which a grievance is reviewed." *Bonneville v Michigan Corrections Org, Serv Emp Int'l Union, Local 526M, AFL-CIO,* 190 Mich App 473, 475; 476 NW2d 411 (1991). (Citations omitted.)

implement the procedures and standards by which to address an employee's grievance, and we find that authority includes application of the rational basis standard. We reject petitioners' argument to the contrary and petitioners' mistaken reliance on *Hardy v State Personnel Director*, 392 Mich 1; 219 NW2d 61 (1974), and *Groehn v Corp & Securities Comm*, 350 Mich 250; 86 NW2d 291 (1957).

In *Hardy, supra* at 3-4, a civil service employee was transferred, or demoted as claimed by the employee, by the state personnel director through an assignment to a new job classification. If the transfer was in fact a demotion, it was not accomplished in conformity with commission rules and needed to be vacated. *Id.* at 6. A hearing officer for the Department of Civil Service conducted a hearing on the matter and deferred entirely to the director's decision, regardless of the facts, on the basis of commission rules providing that the director may set the classification of a new position at the level he deems proper. *Id.* at 7-8. Our Supreme Court, finding that the hearing officer's actions were improper, held:

> The hearing officer, in our opinion, erroneously reduced the scope of his own fact-finding authority by basing his conclusion on the premise that the State Personnel Director had the authority to determine the classification level of a position. Certainly, in the first instance, the State Personnel Director does have such authority. However, the final authority to classify a position is vested in the Civil Service Commission [pursuant to Const 1963, art 11, § 5.]

> \*     \*     \*

> The hearing officer, as an official fact-finder acting on behalf of the Civil Service Commission should have made a finding of fact on the proper classification level of the new

> position. The Commission then, of course, would have been
> able to review this finding of fact and enter its own final
> determination. [*Hardy, supra* at 8-9.]

Here, the technical hearing officer did not completely defer to the Classification Division, rather he received evidence, evaluated the facts, and independently decided whether there was a rational basis for the staff decision. The hearing officer, under the rational basis standard, gave some deference to the Classification Division, which was knowledgeable and experienced in classification issues, but the officer did not abdicate his authority to nullify the actions of the Classification Division.

In *Groehn, supra* at 253, the Michigan Supreme Court addressed a case in which a civil servant was discharged by the Michigan Corporation and Securities Commission, a hearing board of the csc sustained the discharge, and the commission itself rescinded the order of discharge and reinstated the employee, but with a three-month suspension. The Corporation and Securities Commission argued that the csc lacked the authority to modify the hearing board's decision and that it could only accept or reject the decision. *Id.* at 259.

The *Groehn* Court first noted that the commission rules contained no such limitation. *Id.* The Supreme Court further stated:

> Moreover, it is highly questionable if, under our constitutional amendment, which entrusts to civil service the regulation of "all conditions of employment in the State civil service" (Const 1908, art 6, § 22), it could so strip itself of its plenary powers even if it so desired, but we need not discuss the constitutional question since it is our opinion that civil service has not even attempted to do so. Specific lan-

> guage expressive thereof cannot be found and it is not to be inferred that an agency, under a constitutional grant so explicit, would purport to deprive itself of final authority to act as it might ultimately deem best, regardless of action taken on various lower levels by agents whose only powers are those delegated by the civil service commission itself. [*Groehn, supra* at 259-260 (citation omitted).][5]

In performing its constitutional functions, the CSC may provide for whatever assistance it requires to efficiently perform its duties, including assistance from hearing boards and administrative officers. *Id.* at 261. "But the final authority and responsibility remain its own despite these delegations, and its investigative powers in aid of its final decision remain as broad as its responsibility." *Id.*

We first note that the *Groehn* Court specifically declined to reach any constitutional issues in rendering its decision, and any discussion touching on the constitution was therefore dicta. Regardless, even the dicta does not support petitioners' position. There is no indication in the record that the CSC is solely limited to accepting or rejecting Classification Division decisions without the authority to modify decisions. Moreover, the CSC has not deprived itself of having the final authority and responsibility on issues of classification. The CSC has simply decided to give some deference to expert administrative staff, from whom the CSC may seek assistance in carrying out its constitutional duties, while still retaining the ultimate power to strike down staff determinations.

---

[5] Const 1908, art 6, § 22 was the predecessor of Const 1963, art 11, § 5, and it also provided that "[t]he commission shall classify all positions in the State civil service according to their respective duties and responsibilities . . . ."

The focus of our inquiry must be on whether the CSC, through implementation of the rational basis standard, has violated its constitutional mandate to "classify all positions in the classified service according to their respective duties and responsibilities . . . ." Const 1963, art 11, § 5. We find that the CSC has not violated the constitution. If administrative staff does not render a rational decision based on the circumstances of the case and commission rules, regulations, and guidelines, the hearing officer, the ERB, and the CSC are left with the ability to strike down the decision. Through adoption of the rational basis standard, the CSC has clearly determined that experienced staff employees are in the best position to determine the proper technical classification of employees and that if staff determinations are rationally based, the constitutional requirement mandating proper classification has in fact been satisfied. The CSC has not abdicated its constitutional duties. We find no viable legal ground to bar the CSC from applying the rational basis standard.

## DUE PROCESS

Petitioners next contend that the procedures, standards, and mechanisms utilized by the CSC in addressing the classification dispute, including the rational basis standard of review, constituted a deprivation of due process. We disagree.

The federal and Michigan constitutions guarantee that persons may not be deprived of life, liberty, or property without due process of law. US Const, Am V; Const 1963, art 1, § 17. Due process is defined similarly in both constitutions and specifically enforces rights enumerated in the Bill of Rights, along with

providing for substantive and procedural due process. *Kampf v Kampf*, 237 Mich App 377, 381-382; 603 NW2d 295 (1999). "Procedural due process limits actions by the government and requires it to institute safeguards in proceedings that affect those rights protected by due process, such as life, liberty, or property." *Id.* at 382 (citations omitted).

Whether the due process guarantee is applicable depends initially on the presence of a protected "property" or "liberty" interest. *Williams v Hofley Mfg Co*, 430 Mich 603, 610; 424 NW2d 278 (1988). To have a property interest protected requires more than a unilateral expectation to the claimed interest; the claimant must have a legitimate claim of entitlement. *Id.*, quoting *Arnett v Kennedy*, 416 US 134, 165; 94 S Ct 1633; 40 L Ed 2d 15 (1974).

We find it unnecessary to determine if petitioners have a protected property interest in a particular classification for the purpose of procedural due process analysis because even assuming such an interest exists, petitioners were not deprived of due process.

In *Traxler v Ford Motor Co*, 227 Mich App 276, 288; 576 NW2d 398 (1998), this Court, quoting *Cummings v Wayne Co*, 210 Mich App 249, 253; 533 NW2d 13 (1995), stated:

> "Due process in civil cases generally requires notice of the nature of the proceedings, an opportunity to be heard in a meaningful time and manner, and an impartial decisionmaker. The opportunity to be heard does not mean a full trial-like proceeding, but it does require a hearing to allow a party the chance to know and respond to the evidence."

Here, there is no dispute that petitioners received appropriate notice of all proceedings and hearings

within the commission. Additionally, petitioners make no claim that the hearing officer, the ERB, or the commission failed to be impartial. The focus of petitioners' argument is once again on defendant's application of the rational basis standard, which petitioners assert deprived them of any meaningful hearing regarding the proper classification of their positions. We have already found that the rational basis standard does not violate the Michigan Constitution, and we further find that standard and the other procedures implemented by defendant do not violate petitioners' due process rights.

After a thorough review of the record that dates back to 1985, it is readily apparent that petitioners have been afforded due process time and time again. Petitioners have had their classification grievances heard in a meaningful manner, in which there has been in-depth analysis on numerous occasions by the Classification Division concerning the proper classification, multiple hearings before the technical hearing officer on the issue of classification, and review by the ERB and the CSC itself, and in which petitioners on occasion received favorable rulings. Simply because defendant applied the rational basis standard as part of the extensive procedural and substantive review, it cannot be said that petitioners were deprived of a meaningful process by which to air their classification grievance. Petitioners had the opportunity, through documentation presented to administrative staff and at a three-day evidentiary hearing, to adequately present their claims and to show that the Classification Division's findings were not rationally based on the evidence; however, the hearing officer, the ERB, and the commission disagreed. One is not deprived of pro-

cedural due process because of an unsuccessful outcome in the proceedings.

### B. PREPONDERANCE OF THE EVIDENCE TEST AND NECESSITY OF FACTUAL FINDINGS

Petitioners argue that the CSC is required to apply a true preponderance of the evidence test in determining whether they were properly classified, and it cannot require petitioners to prove by a preponderance of the evidence that a staff decision lacked a rational basis. Petitioners' position apparently is that the CSC standard, which incorporates the preponderance of the evidence test, dilutes the test. We disagree.

Petitioners mistakenly rely on cases that were controlled by the Administrative Procedures Act (APA), MCL 24.201 *et seq.*; however, the APA expressly excludes from its ambit the CSC. MCL 24.203(2); *Viculin, supra* at 393-394; *Parnis v Civil Serv Comm*, 79 Mich App 625, 629; 262 NW2d 883 (1977).[6]

In *Bunce v Sec'y State*, 239 Mich App 204, 218; 607 NW2d 372 (1999), this Court, addressing standards of proof in administrative proceedings, stated:

> Our Supreme Court has held that the requisite standard of proof in administrative proceedings is generally the same as that used in civil cases—a preponderance of the evidence. *BCBSM v Governor*, 422 Mich 1, 89; 367 NW2d 1 (1985); *Aquilina v General Motors Corp*, 403 Mich 206, 210; 267 NW2d 923 (1978); LeDuc, [Michigan Administrative Law (1993)], § 6:43, Ch 6—p 55. However, we are unable to

---

[6] We do note, however, that MCR 7.104(C) provides that "[a]n appeal from a decision of the Michigan Civil Service Commission is governed by the provisions for appeals from administrative agencies in the Administrative Procedures Act." This provision regards the appellate process and does not affect the burden of proof that the CSC may implement.

locate any authority, and petitioner has cited none, that pro-
hibits an administrative agency from altering the standard
of proof on a particular issue to "clear and convincing evi-
dence" where appropriate. On the other hand, there is sub-
stantial authority suggesting that an administrative agency
may indeed alter the standard of proof with regard to a par-
ticular issue where the underlying statute does not deline-
ate any particular standard. See, e.g., *Cogan v Bd of Osteo-*
*pathic Medicine & Surgery,* 200 Mich App 467, 470; 505
NW2d 1 (1993); *Dep't of Social Services v Emmanuel Bap-*
*tist Pre-School,* 150 Mich App 254, 261; 388 NW2d 326
(1986), mod on other grounds 434 Mich 380; 455 NW2d 1
(1990).

Here, the constitutional provision from which the
CSC derives its power does not provide for any partic-
ular standard of proof concerning disputes within the
commission. Const 1963, art 11, § 5. Considering the
CSC's plenary power and its authority to adopt any
constitutionally sound grievance or appellate proce-
dure it finds appropriate, we see no reason why the
CSC cannot require petitioners to prove by a prepon-
derance of the evidence that a decision lacked a
rational basis. The standard is fair and appropriate,
and it provides adequate protection to employees so
that staff classification determinations cannot be
made in an arbitrary and capricious manner, but must
be rationally based on the evidence or be subject to
reversal.

With regard to factual findings, the CSC does not
have to make findings of fact at every level of internal
review. See *Viculin, supra* at 405. The upper levels of
review within the commission may merely adopt find-
ings of fact made at lower levels. See *id.* An adminis-
trative record contains sufficient facts for an appel-
late court to affirm where the record allows the rea-

sons for the commission's decision to be discerned. *Viculin, supra* at 404-406. The present record consists of four volumes entitled "Certified Civil Service Record" and contains more than enough facts to allow the reasons for the commission's decision to be discerned. Initially, the Classification Division made numerous findings in regard to the work performed by petitioners and classification distinctions. We note that extensive fact finding was not necessary in the case sub judice. There is no substantial dispute concerning the actual duties performed by petitioners; rather the focus of the issue, classification interpretation, is more akin to an issue of law. Moreover, despite application of the rational basis standard, the technical hearing officer did in fact make numerous factual findings relative to the proper classification of petitioners' employment.

### C. SUFFICIENCY OF EVIDENCE IN SUPPORT OF COMMISSION'S RULING

Petitioners' final argument is that the commission's decision was not supported by competent, material, and substantial evidence. We disagree. Our inquiry requires us to determine whether the trial court clearly erred in upholding the commission's final order. *Boyd, supra* at 234-235.

Circuit courts must uphold a CSC decision that is supported by competent, material, and substantial evidence on the whole record. *Iams v Civil Serv Comm*, 142 Mich App 682, 692-693; 369 NW2d 883 (1985). This constitutes a limited scope of review in which the commission's decision must be affirmed if supported by evidence that a reasonable mind would accept as adequate to support the decision. *Tenbusch*

*v Dep't of Social Servs*, 172 Mich App 282, 293; 431
NW2d 485 (1988). This standard requires more than a
scintilla, but not necessarily a preponderance, of evi-
dence. *Michigan Ed Ass'n Political Action Comm v
Sec'y of State*, 241 Mich App 432, 445-446; 616 NW2d
234 (2000). A scintilla is " 'a minute particle; spark;
[or] trace.' " *Id.*, quoting *Random House Webster's
College Dictionary* (1997) at 1159.

The record discloses that the CHD classification was
created for petitioners by the Classification Division,
which extensively detailed the reasons why petition-
ers' positions fit within the classification. Similarly,
when petitioners put forth the CHDC classification, the
Classification Division discussed what a consultant
was and why neither petitioners' proposed classifica-
tion nor their jobs involved consulting. The redetermi-
nation officer, referencing the division analyst's
proper application of the *Benchmark Factor Ranking
System of Classification for the Human Services Ser-
vice Group*, also discussed why petitioners' proposed
classification did not involve consulting. We find that
the evidence presented to the hearing officer, and on
which he made his ruling that there was a rational
basis for the Classification Division's decisions, were
sufficient for the purpose of our review. Therefore,
we are not left with a definite and firm conviction
that the trial court made a mistake. *Boyd, supra* at
235-236.

IV. CONCLUSION

The rational basis standard adopted by the CSC does
not violate art 11, § 5 of the Michigan Constitution,
nor does the standard offend the principles of proce-
dural due process. Additionally, the CSC, possessing

plenary power under the constitution, had the authority to require petitioners to prove by a preponderance of the evidence that the Classification Division's findings were not rationally based. Further, there were sufficient findings of fact below to allow appropriate appellate review where the record sufficiently indicated the reasons for the commission's decision. Finally, the circuit court did not clearly err in ruling that respondent commission's decision was supported by competent, material, and substantial evidence.

Affirmed.